## HARFORD MUTUAL INSURANCE COMPANY

v.

## SEIBELS, BRUCE AND COMPANY.

### Civ. No. Y-82-2319.

United States District Court,
D. Maryland.

Jan. 25, 1984.

Frank X. Gallagher, Baltimore, Md., for plaintiff.

J. Allen Maines, Atlanta, Ga. and Nell B. Strachan, Baltimore, Md., for defendants.

## MEMORANDUM

JOSEPH H. YOUNG, District Judge.

Presently pending before this Court in this breach of contract and tort action is defendant Seibels, Bruce & Company's ("Seibels") motion for summary judgment and to strike. Memoranda in support of and in opposition to this motion have been filed by the parties and considered by the Court. Pursuant to Local Rule 6, no hearing is necessary. For the reasons stated herein, defendant's motion for summary judgment will be granted with respect to the tort claims contained in Counts 5 and 6 of the complaint, and will be denied with respect to the contract claims contained in Counts 1 through 4 of the complaint. Defendant's motion to strike plaintiff's claims for actual, special, and consequential damages will be denied.

Plaintiff Harford Mutual Insurance Company ("Harford") is a small insurance company with headquarters in Bel Air, Maryland. Defendant Seibels is in the business of developing and licensing computer software packages for use by insurance companies. Defendant Policy Management Systems Corporation ("PMS"), then a division of Seibels, and now a publicly held company, has not joined this motion.

On March 31, 1978, Harford and Seibels entered into a License Agreement for Harford to purchase a computer software product called the Policy Management System ("PMS") from Seibels. In May of 1978, the computer programs called Release 5.1.2 were delivered to Harford. In October of 1979, Release 5.3, a more advanced version of the PMS system, was delivered to Harford.

Plaintiff contends that it encountered numerous problems in implementing the computer software system. In a letter to PMS, dated May 20, 1981, Harford rescinded the contract and demanded reimbursement of all funds paid to PMS.

The underlying diversity action was filed on March 8, 1982. Plaintiff asserts six causes of action in its complaint: (1) breach of express warranties; (2) breach of implied warranty of merchantibility under the Uniform Commercial Code ("UCC"); (3) breach of implied warranty of fitness for a particular purpose under the UCC; (4) breach of contract; (5) negligent misrepresentation; and (6) fraud in the inducement.

The substantive law to be applied in this case is South Carolina law. The choice of law clause contained in the License Agreement states:

> This Agreement and all Attachments accepted hereunder shall be deemed to have been executed and entered into in the State of South Carolina and shall be construed, performed and enforced in all respects in accordance with the law thereof.

"It is now generally accepted that the parties to a contract may agree as to the law which will govern their transaction, even as to issues going to the validity of the contract." *Kronovet v. Lipchin*, 288 Md. 30, 43, 415 A.2d 1096, 1104 (1980).

## I. HARFORD'S TORT CLAIMS IN COUNTS 5 AND 6 OF THE COMPLAINT ARE BARRED BY THE APPLICABLE STATUTE OF LIMITATIONS

Plaintiff and defendant agree that the statute of limitations of Maryland, as the forum state, will apply to plaintiff's tort claims. *See Doughty v. Prettyman*, 219 Md. 83, 88, 148 A.2d 438, 440–41 (1959). Maryland's statute of limitations for a tort claim is Md.Cts. & Jud.Proc.Code Ann. § 5–101, which provides that "[a] civil action at law shall be filed within three years from the date it accrues."

Maryland recently adopted the "discovery rule" for determining when a cause of action accrues. "The cause of action accrues when the claimant in fact knew or reasonably should have known of the wrong." *Poffenberger v. Risser*, 290 Md. 631, 636, 431 A.2d 677, 680 (1981).

Plaintiff contends that the accrual date of a cause of action is necessarily a matter of factual determination for the jury, citing *Johnson v. Nadwodny*, 55 Md.App. 227, 231, 461 A.2d 67, 70 (1983). The court in *Johnson* stated that substitution of the "discovery rule" for the "occurrence-of-the-wrong rule" "affected the relative ease with which a court could apply limitations as a matter of law because the crucial accrual date is no longer so clearly ascertainable." *Id.* The court, however, affirmed the trial court's directed verdict because express knowledge of the cause of action was admitted by plaintiff and set forth in her pleadings. *Id.* at 233, 461 A.2d at 71. The court stated that "[a]ctual knowledge is usually uncontroverted and may be easily ascertainable as the occurrence of wrong." *Id.* at 232, 461 A.2d at 70.

There is uncontroverted evidence that Harford had actual knowledge that Seibels had committed the alleged fraud and negligent misrepresentations. Plaintiff states the following on pages 9–10 of its memorandum in opposition to the motion for summary judgment:

> In June of 1978, Tom Burke spent two and a half days in PMS' headquarters for training in the operation and implementation of the programs Harford had purchased. It was then that he learned that the programs Harford had bargained for, and about which Seibels had warranted,

were in the development stage and not yet ready for release to customers. Burke was told in this visit that the programs actually delivered were called Release 5.1.2 (Burke deposition at 114), and that the programs described to Harford prior to executing the Agreement would be forthcoming later in a product called Release 5.3, a vastly altered version of the Policy Management System.

Burke admits in his deposition that it was discovered that the system was not working adequately "at the outset." Moreover, Burke "got a pretty severe shock" at the training session in June of 1978, when he discovered that Release 5.3 had not come out yet. He "had a bad feeling in the pit of [his] stomach that all wasn't well with the world and that we really had not been dealt with fairly."

Plaintiff contends that summary judgment on this issue is inappropriate because "[a] factual dispute exists as to whether Harford possessed knowledge of Seibels' wrong earlier than May of 1981." Plaintiff, however, does not produce any evidence to counter Burke's admissions that he knew of defendants' alleged fraud and misrepresentations when the system was delivered in May of 1978 and when he attended the training session in June of 1978.

Plaintiff, understandably, appeared to adopt a "wait and see" attitude regarding the functioning of the system. Plaintiff states on pages 30–31 of its supplemental memorandum that,

Although Tom Burke learned in June of 1978 that Release 5.3 was not yet ready to be installed, Harford received assurances from Seibels that the interim package, Release 5.1.2, would do many of the things Harford wanted and that Release 5.3, when available, would be a thoroughly tested product which would perform all of the represented functions (Burke deposition at 126, 226–27). When Release 5.3 was received in the fall of 1979, Harford reasonably believed that the initial problems it was experiencing with the new system were a natural part

of the lengthy process of implementing a complex program package.

Because plaintiff's tort claims accrued in June of 1978, and this action was not filed until March of 1982, plaintiff's tort claims are barred by Md.Cts. & Jud. Proc.Code Ann. § 5–101. Attempts to repair a computer system and subsequent misrepresentations do not toll the statute of limitations. *Triangle Underwriters, Inc. v. Honeywell, Inc.*, 457 F.Supp. 765, 771 (E.D.N.Y.1978), *aff'd in part and rev'd in part*, 604 F.2d 737 (2d.Cir.1979).

## II. SUMMARY JUDGMENT WILL BE DENIED WITH RESPECT TO PLAINTIFF'S CONTRACT CLAIMS

Defendant moves for summary judgment with respect to plaintiff's contract claims on the grounds that they are barred by Maryland's three-year statute of limitations. Md.Cts. & Jud.Proc.Code Ann. § 5–101. Plaintiff contends that its contract claims are based upon the Uniform Commercial Code as enacted by South Carolina, and, therefore, that the six-year statute of limitations set forth therein governs. S.C.Code Ann. § 36–2–725.

Article 2 of the UCC generally is restricted in its application to goods, and does not apply to services. The central issues are whether the License Agreement constitutes a "contract for sale," and whether the computer software programs in question are goods or services for purposes of applying the UCC. It is inappropriate to grant summary judgment on plaintiff's contract claims because these issues depend upon material facts that are in dispute.

## III. DEFENDANT'S MOTION TO STRIKE PLAINTIFF'S CLAIMS FOR ACTUAL AND CONSEQUENTIAL DAMAGES

Defendant argues that plaintiff is precluded from asserting a claim for actual damages because the License Agreement expressly limits defendant's liability solely to the correction of or replacement of the system. Plaintiff contends that the UCC

provides that where the circumstances cause a limited remedy to fail of its essential purpose, remedy may be had as otherwise provided by Article Two of the Code. Md.Com.Law Code Ann. § 2–719(2); S.C. Code § 36–2–719(2). Plaintiff also argues that Seibels has not and cannot repair or replace the system. This Court believes that it is inappropriate to eliminate plaintiff's right to recover damages at this time because there is a factual dispute concerning the adequacy of the repair or replacement remedy.

Seibels contends that plaintiff is precluded from seeking special or consequential damages because such damages are expressly excluded by the following provision in the License Agreement:

CUSTOMER agrees that it shall be solely responsible for its use of SYSTEM and compliance with all applicable federal, state, provincial, and local laws and regulations. CUSTOMER further agrees to hold SEIBLES harmless from any and all liability arising out of CUSTOMER'S use of SYSTEM including without limitation special or consequential damages, even if SEIBELS has been advised of the possibility of such damages. CUSTOMER'S obligations hereunder shall continue after this Agreement is terminated.

Plaintiff argues that this provision applies only to claims of third parties for damages allegedly caused by its use of the system, and not to claims seeking to recover its own consequential damages. Consequential damages may arise from liability to third persons incurred from the use of a seller's product. White & Summers, *Uniform Commercial Code*, ·§ 10–4, at 321 (1972).

Neither party has cited any evidence from the record to support its interpretation of this clause of the contract. Because there is a dispute regarding the intention of the parties and the interpretation of this clause, the motion to strike will be denied.

The motion to strike will also be denied, regardless of the degree of ambiguity in the above provision, because plaintiff has contended that the provision should not be given effect because it is unconscionable. Defendant recognizes that plaintiff's contentions are based on the unconscionability provisions of the UCC. The applicability of the UCC to the License Agreement involves issues of material fact that are in dispute.

Defendant contends that even if the UCC applies, Harford cannot recover special or consequential damages under the License Agreement. Defendant cites Section 719(3) of Article 2 of the UCC, which provides that:

(3) Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

In *Investors Premium Corporation v. Burroughs Corporation*, 389 F.Supp. 39, 45 (D.S.C.1974), the court held that a buyer of computer hardware had expressly waived incidental or consequential damages. The court stated that "[s]uch a limitation is authorized by [the UCC] and is common in these types of commercial agreements. There is nothing unconscionable about them in situations like this."

The motion to strike plaintiff's claim for consequential damages will be denied because there is a factual dispute whether the totality of circumstances in this case makes the provision in the License Agreement unconscionable.

Defendant also argues that plaintiff is precluded from recovering consequential damages because defendant did not agree to assume the risk of such damages at the time of contracting. The tacit agreement test for the recovery of consequential damages has been rejected by the UCC. Section 2–715(2) states that the seller is liable for "any loss resulting from general or particular requirements for which the seller at the time of contracting had reason to know." White & Summers, *Uniform Commercial Code*, § 10–4, at 316–17 (1972). It

is a question of fact whether reasonable men in the position of defendant would have foreseen that the consequential damages claimed by plaintiff were a probable result of a breach of the License Agreement.

## ORDER

In accordance with the statements in the Memorandum attached hereto, it is this 25th day of January, 1984, by the United States District Court for the District of Maryland, ORDERED:

1. That defendant's motion for summary judgment with respect to the tort claims contained in Counts 5 and 6 of the complaint BE, and the same ARE, hereby GRANTED;

2. That the defendant's motion for summary judgment with respect to the contract claims contained in Counts 1 through 4 of the complaint BE, and the same ARE, hereby DENIED;

3. That the defendant's motion to strike plaintiff's claim for actual, special, and consequential damages BE, and the same ARE, hereby DENIED; and

4. That a copy of this Memorandum and Order be forwarded to counsel for the parties.