500 A.2d 641

**BOOTH GLASS COMPANY, INC.**

**v.**

**HUNTINGFIELD CORPORATION et al.**

**No. 25, Sept. Term, 1985.**

Court of Appeals of Maryland.

Dec. 2, 1985.

Waller S. Hairston (Henry, Hairston & Price, on the brief), Easton, for appellant.

Floyd L. Parks (Ernest S. Cookerly, on brief), Chestertown, for appellees.

Argued before MURPHY, C.J., SMITH, COLE, RODOWSKY, COUCH and McAULIFFE, JJ., and CHARLES E. ORTH, Jr., Former Associate Judge of the Court of Appeals (retired) Specially Assigned.

MURPHY, Chief Judge.

The question presented in this case is whether the three-year Statute of Limitations, Maryland Code (1974, 1984 Repl.Vol.), § 5–101 of the Courts and Judicial Proceedings Article, is tolled during the pendency of a defendant's

efforts to repair negligently installed glasswork in a building.[1]

## I

On May 1, 1975, Huntingfield Corporation (Huntingfield) contracted with a general contractor, Joseph A. Campbell, Jr. (Campbell), to construct an addition to a building on property owned by Huntingfield. Booth Glass Company, Inc. (Booth), one of Campbell's subcontractors, installed the exterior glass in the new building, completing the work in June of 1976. Within two weeks, following a rainstorm, the co-owners of Huntingfield, Hugh B. Morrison, Jr. and Wilson O. Henderson, noticed that the glasswork "leaked like a sieve." Thereafter, Booth made numerous attempts to repair the work through replacement of the rubber sealant, caulking and drilling of "weep" holes. While the repairs undertaken by Booth reduced the amount of leakage, the problem was never completely solved and substantial leaking continued after Booth's last repair effort in April of 1978.

During the two-year period that Booth was making repair efforts, and for two years after all attempts to repair the defective installation ceased, Donald Booth, Sr., President of Booth, assured Huntingfield and Campbell, both orally and in writing, that he would do what was necessary to stop the leaks. The last time that Booth assured Huntingfield that the leaking would be corrected was in late July or early August of 1980.

On July 24, 1980, Huntingfield filed suit against Campbell and Booth, alleging in Count One that Campbell breached

---

1. Section 5–101 provides:
   "A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced."

its contract by failing to perform the construction in a workmanlike manner.[2]   Huntingfield alleged in Count Two that Booth breached its implied warranty that the windows were of merchantable quality and fit for their intended purpose.   Count Three alleged that Booth was negligent in the installation of the glasswork.

Booth moved for summary judgment, asserting that Huntingfield's claim was barred by limitations because more than three years had passed since Huntingfield's discovery of the leakage in June of 1976.   The motion was denied.   At the conclusion of trial, Booth again raised limitations and moved for dismissal of the action.   The trial judge, in finding that Huntingfield's claim against Booth was not barred, held that the "acknowledgment doctrine" operated to toll the running of limitations on Huntingfield's action until April of 1978 when Booth made its last attempt to repair the glasswork.

As to Huntingfield's claim that Booth breached its implied warranty of merchantability, the court determined that defective services rather than goods were involved and that the warranty count was therefore without merit.   The court did find, however, that Booth installed the glass improperly, thereby preventing the gutters from draining properly and resulting in leaks.   Accordingly, it ruled that Booth was liable under the negligence count and awarded judgment in Huntingfield's favor for $72,280.

The Court of Special Appeals, in an unreported opinion, concluded that the trial judge erred in applying the acknowledgment doctrine as that doctrine was applicable only to contract and not tort actions.   Nevertheless, the intermediate appellate court held that Huntingfield's claim was not barred because the running of limitations was tolled by Booth's continuing attempts to repair the negligently in-

---

**2.**   Huntingfield voluntarily dismissed its action against Campbell at the conclusion of the trial.

stalled glasswork. In so holding, the Court of Special Appeals said:

> "This precedent has been applied and developed in negligence actions involving medical malpractice. The doctrine of continuing treatment provides that when there is a continuing course of treatment, the statute does not begin to run until the treatment is terminated, *Decker v. Fink*, 47 Md.App. 202, 209 [422 A.2d 389] (1980). We find that Booth Glass committed on-going negligence in failing to diagnose accurately and to correct the cause of the leakage. The cause of action accrued only at the termination of their relationship, being the last attempt to repair. Accordingly, the cause of action accrued in April, 1978, and the 1980 suit was timely."

We granted Booth's certiorari petition to determine whether the continuous course of treatment rule applied in the circumstances of this negligence action to toll the running of the statute of limitations.

## II

Under § 5–101 of the Courts Article, an action must be filed within three years of the date that it "accrues." The question of when a cause of action accrues is left to judicial determination. *Pierce v. Johns-Manville Sales Corp.*, 296 Md. 656, 664, 464 A.2d 1020 (1983); *Harig v. Johns-Manville Products*, 284 Md. 70, 75, 394 A.2d 299 (1978). In *Poffenberger v. Risser*, 290 Md. 631, 431 A.2d 677 (1981), the discovery rule was held generally applicable to all tort actions. We there said that a cause of action accrues under the discovery rule "when the claimant in fact knew or reasonably should have known of the wrong." *Id.* at 636, 431 A.2d 677. We further stressed that

> "the discovery rule contemplates actual knowledge—that is express cognition, or awareness implied from
>> 'knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [thus, charging the individual] with notice of all facts which such an

investigation would in all probability have disclosed if it had been properly pursued.' "

*Id.* at 637, 431 A.2d 677 (quoting *Fertitta v. Bay Shore Dev. Corp.,* 252 Md. 393, 402, 250 A.2d 69 (1969), quoting *Blondell v. Turover,* 195 Md. 251, 257, 72 A.2d 697 (1950)) (bracketing in original).

The continuous course of treatment rule, upon which the Court of Special Appeals predicated its decision, has heretofore been applied in Maryland only in medical malpractice cases. *See Waldman v. Rohrbaugh,* 241 Md. 137, 215 A.2d 825 (1966), where we stated the rule as follows:

"[I]f the treatment by the doctor is a continuing course and the patient's disease or condition is of such a nature as to impose on the doctor a duty of continuing treatment and care, the statute does not commence running until treatment by the medical man for the particular disease or condition involved has terminated, unless during the course of treatment the patient learns or should reasonably have learned of the harm, in which case the statute runs from the time of knowledge, actual or constructive." *Id.* at 140–41, 215 A.2d 825.

The rule is applied in medical malpractice cases because of the confidential, special relationship that necessarily exists between a patient and physician. *Hill v. Fitzgerald, Pers. Rep. of the Estate of Joseph C. Fitzgerald, M.D., deceased,* 304 Md. 689, 501 A.2d 27 (1985); *Triangle Underwriters, Inc. v. Honeywell, Inc.,* 604 F.2d 737, 744 (2d Cir.1979). *See also College v. United States,* 411 F.Supp. 738 (D.Md.1976), *aff'd,* 572 F.2d 453 (4th Cir.1978). As the court explained in *Brown v. United States,* 353 F.2d 578 (9th Cir.1965): *United States,* 353 F.2d 578 (9th Cir.1965):

"The reason for the rule ... is that one is presumed to repose confidence in the individual doctor to whom he entrusts his medical problems and that the confidential relationship excuses the making of inquiry which questions the care which has been or is being given during the existence of the relationship." *Id.* at 580.

### III

It is undisputed that Huntingfield, in June of 1976, knew that the glasswork was leaking and therefore was upon notice that Booth may have been negligent. The Court of Special Appeals, in applying the continuous course of treatment rule, expressly declined to recognize that Huntingfield had actual notice of the negligent installation in June of 1976. The court seemingly focused instead upon Huntingfield's allegation that Booth "continued to be negligent in failing to detect or correct the error." It referred to the holding in *W., B. & A. Elec. R.R. Co. v. Moss*, 130 Md. 198, 204–05, 100 A. 86 (1917), that "in cases where there is an undertaking which requires a continuation of services ... the statute begins to run only from the time the services can be completed." In view of Booth's continuing efforts to repair, the court said that Huntingfield had reason to be "hopeful" that the leakage would be cured and thus "it was not unreasonable for Huntingfield to rely on Booth Glass' repeated promises and attempts to repair."

In *Waldman v. Rohrbaugh, supra,* we recognized the existence of two nonmedical malpractice cases which applied "the theory of the continuation of events, only the last of which [event] starts the running of the statute." 241 Md. at 141, 215 A.2d 825. *Vincent v. Palmer*, 179 Md. 365, 19 A.2d 183 (1941) held in effect that where a contract claim is based on "continuous employment," the statute of limitations will not commence to run until completion of the contract. The *W., B. & A.* case, as noted by the intermediate appellate court, involved an undertaking which required a continuation of services. These cases suggest that if the subject of a suit is an undertaking or event that is continuing in nature, the time of accrual of the cause of action will be the date upon which the continuing event is completed.

Huntingfield's suit against Booth was based upon the negligent installation of the glasswork and not upon negligence in the repair process. Nor was the suit in any

way predicated upon a contract created by Booth's promise to Huntingfield to repair the leaks. As a subcontractor of Campbell, Booth had no contractual relationship with Huntingfield, which required it to make repairs to the defectively installed glasswork. Neither the continuous course of treatment rule nor the "continuation of events" theory governs when Huntingfield's cause of action accrued in this case. Rather, the discovery rule of *Poffenberger v. Risser, supra,* controls the outcome of this case. Because Huntingfield knew, or reasonably should have known of Booth's negligence in June of 1976, its cause of action accrued at that time and suit was therefore barred by the three-year limitations period under § 5–101.

In so concluding, we are aware that courts in some jurisdictions, in contract and warranty actions, have adopted or recognized the rule that limitations will be tolled where (a) assurances are given that repairs will be made and (b) attempts to correct a defect are actually undertaken. *See, e.g., Louisville Silo & Tank Co. v. Thweatt,* 174 Ark. 437, 295 S.W. 710 (1927); *Southern California Enterprises v. D.N. & E. Walter & Co.,* 78 Cal.App.2d 750, 178 P.2d 785 (1947); *Gaffney v. Unit Crane and Shovel Corp.,* 49 Del. 381, 117 A.2d 237 (1955); *Bowan v. Oklahoma Natural Gas Company,* 385 P.2d 440 (Okla.1963); *Ranker v. Skyline Corp.,* 342 Pa.Super. 510, 493 A.2d 706 (1985). In addition, one court has held that assurances that repairs will be made will toll limitations. *See Mason v. County of Mobile,* 410 So.2d 19 (Ala.1982). Other courts, however, have determined that even though assurances are given, attempts to repair will not toll limitations absent a strong showing of inducement by the defendant not to sue. *See, e.g., Beckenstein v. Potter and Carrier, Inc.,* 191 Conn. 150, 464 A.2d 18 (1983); *Neal v. Laclede Gas Company,* 517 S.W.2d 716 (Mo.Ct.App.1974); *Bishop-Babcock-Becker Co. v. Jennings,* 245 S.W. 104 (Tex.Civ.App.1922); *Boykins Narrow Fabrics v. Weldon Roofing,* 221 Va. 81, 266 S.E.2d 887 (1980). Also noteworthy are cases where no assurances were given that defects would be repaired, but where

attempts to repair were made and the courts held that such action did not toll limitations. *See, e.g., Triangle Underwriters, Inc. v. Honeywell, Inc.,* 604 F.2d 737 (2d Cir.1979); *Binkley Company v. Teledyne Mid-America Corporation,* 333 F.Supp. 1183 (E.D.Mo.1971), *aff'd,* 460 F.2d 276 (8th Cir.1972); *E.L. Farmer Const. v. Hartford Acc. & Indem.,* 114 Ariz. 210, 560 P.2d 65 (1977); *K/F Dev. & Inv. v. Williamson Crane & Dozer,* 367 So.2d 1078 (Fla.Dist.Ct. App.1979); *Tomes v. Chrysler Corp.,* 60 Ill.App.3d 707, 18 Ill.Dec. 71, 377 N.E.2d 224 (1978); *Zahler v. Star Steel Supply Company,* 50 Mich.App. 386, 213 N.W.2d 269 (1973); *Poppenheimer v. Bluff City Motor Homes,* 658 S.W.2d 106 (Tenn.Ct.App.1983). Included in this line of cases is *Harford Mut. Ins. Co. v. Seibels, Bruce and Co.,* 579 F.Supp. 135 (D.Md.1984) where, in interpreting Maryland law, the court held that "[a]ttempts to repair a computer system ... do not toll the statute of limitations." *Id.* at 138. *See also* Annot., *Promises or Attempts by Seller to Repair Goods as Tolling Statute of Limitations for Breach of Warranty,* 68 A.L.R.3d 1277 (1976).

■ We have long adhered to the principle that where the legislature has not expressly provided for an exception in a statute of limitations, the court will not allow any implied or equitable exception to be engrafted upon it. *See Walko Corp. v. Burger Chef Systems,* 281 Md. 207, 211, 378 A.2d 1100 (1977); *McMahan v. Dorchester Fert. Co.,* 184 Md. 155, 160, 40 A.2d 313 (1944). Indeed, the General Assembly has expressly provided exceptions to § 5–101 in those instances where it determined that a time limitation should be computed differently. Section 5–201, for example, provides that limitations shall, in effect, be tolled when a cause of action accrues in favor of a minor or incompetent person until the period of disability has passed. Under § 5–202, the time between the filing of a petition in insolvency and its dismissal is not included when calculating the time an action becomes barred by limitations. And § 5–203 provides that "[i]f a party is kept in ignorance of a cause of action by the fraud of an adverse party," its cause of action

accrues when the fraud is discovered. While the legislature has provided the above exceptions, it has made no such provision in cases where a party is assured that a defect will be corrected and attempts at repair are made by a defendant.

■ Where repairs have been held to toll limitations, courts have done so largely on principles of equitable estoppel. *See, e.g., Walker Mfg. v. Dickerson, Inc.,* 560 F.2d 1184, 1187 (4th Cir.1977); *Mason v. County of Mobile, supra,* 410 So.2d at 21. One court recently characterized the doctrine as "a particularized form of estoppel." *Ranker v. Skyline Corp., supra,* 493 A.2d at 709. In Maryland, however, it is well settled that equitable estoppel will not toll the running of limitations absent a showing that the defendant "held out any inducements not to file suit or indicated that limitations would not be pleaded." *Nyitrai v. Bonis,* 266 Md. 295, 300, 292 A.2d 642 (1972). To the same effect, see *Leonhart v. Atkinson,* 265 Md. 219, 228, 289 A.2d 1 (1972); *Jordan v. Morgan, Adm'x,* 252 Md. 122, 132, 249 A.2d 124 (1969); *Cornett v. Sandbower, Adm'r,* 235 Md. 339, 342, 201 A.2d 678 (1964).

As we earlier observed, the suit in this case was for negligent installation of the glasswork and not for subsequent negligent acts committed in the repair process. The record does not disclose that Booth held out any inducements to Huntingfield not to file suit, or that it indicated in any way that limitations would not be pleaded. Nor is there any showing of an unconscionable, inequitable or fraudulent act of commission or omission by Booth upon which Huntingfield relied in delaying the initiation of its law suit. *See Jordan v. Morgan, Adm'x, supra,* 252 Md. at 132, 249 A.2d 124. Booth's continuing representations that it would do whatever was necessary to correct its original negligence in installing the glasswork was not the legal equivalent of an inducement to Huntingfield not to sue, or a representation that limitations would not be pleaded. There is nothing in the record to indicate that in undertaking

repairs Booth was motivated by a purpose other than to remedy the leaks in the glasswork. Indeed, as the trial judge found, Booth's continuing recognition of the need to correct the leakage did not mean that Booth would forego reliance upon the statute of limitations in the event of suit.

## IV

Huntingfield argues that in the circumstances of this case the "acknowledgment doctrine," as articulated in *Potterton v. Ryland Group, Inc.*, 289 Md. 371, 424 A.2d 761 (1981), was applicable and tolled the running of the statute of limitations. While the trial court so held, the Court of Special Appeals reversed that determination, finding that the doctrine applied only in contract actions. Huntingfield did not file any cross-petition for certiorari and the issue now sought to be raised is not properly before us. *See* Maryland Rule 813 a; *Clark v. Elza*, 286 Md. 208, 406 A.2d 922 (1979).

JUDGMENT REVERSED, WITH COSTS.