689 A.2d 634

**John DOE**

v.

**ARCHDIOCESE OF WASHINGTON, et al.**

**No. 207, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Feb. 26, 1997.

170

Keith A. Rosenberg (Shana E. Ommaya and Meyer, Faller, Weisman and Rosenberg, P.C., on the brief) Washington, DC, for Appellant.

Kevin T. Baine (Philip A. Sechler and Williams & Connolly, on the brief for appellee, Archbishop) Washington, DC.

Martin A. Hertz of Crofton, MD, for appellee, Schaefer.

Argued before MURPHY, C.J., and FISCHER and HOLLANDER, JJ.

HOLLANDER, Judge.

This case concerns the timeliness of a suit instituted by appellant, John Doe, in the Circuit Court for Prince George's County. In 1995, seventeen years after reaching adulthood, Doe sued the Reverend Thomas Sebastian Schaefer, the Reverend Alphonsus Michael Smith, and the Archdiocese of Washington,[1] appellees, because of the sexual child abuse that he suffered during the period 1972 through 1978, when Doe was between eleven and seventeen years of age. Based on the statute of limitations, the trial court granted appellees' motions to dismiss. Appellant has appealed and presents the following questions for our review, which we have rephrased.

I. Did the trial court correctly conclude that appellant's suit was time-barred, because his claims based on childhood

---

1. In his complaint, appellant named the Roman Catholic "Archdiocese of Washington" as a defendant. In their motion to dismiss, however, appellees responded on behalf of the "Archbishop of Washington, A Corporation Sole," as well as the individual defendants.

sexual abuse accrued in 1978, when he reached the age of majority?

II. Did the trial court err in rejecting appellant's argument that the statute of limitations was tolled by the doctrine of fraudulent concealment?

For the reasons discussed below, we conclude that the court properly dismissed the suit. Therefore, we shall affirm.

### Factual Background [2]

Appellant served as an altar boy at the Church of St. Matthias in Lanham, Maryland beginning in 1972, when he was 11 years old. Between 1972 and 1978, at least two priests sexually abused appellant.[3] This appeal involves sexual abuse by Schaefer, who served as pastor at St. Matthias from 1972 through 1975, and Smith, who served as pastor there beginning in 1975. The priests gained appellant's trust by giving him money and gifts, and then repeatedly molested him. In addition, Schaefer used pornographic material while engaging in sexual acts with appellant, and also took pornographic photographs of him.

According to the allegations, when the Archdiocese learned in 1967 that Schaefer was a pedophile, he was required to undergo treatment. Subsequently, the Church placed him at Saint Francis de Sales Parish in Washington, D.C. in 1971, and later transferred him to St. Matthias in 1972. Appellant

---

**2.** Since this case concerns an appeal from a judgment dismissing the complaint, we must accept as true all well pleaded facts in the complaint. *Lemon v. Stewart*, 111 Md.App. 511, 517, 682 A.2d 1177 (1996). *See also* Md.Rule 2–322(b); *Bennett Heating v. NationsBank*, 103 Md. App. 749, 757, 654 A.2d 949 (1995), *aff'd in part and rev'd in part on other grounds*, 342 Md. 169, 674 A.2d 534 (1996) (On a motion to dismiss, the trial court was required to " 'assume the truth of all relevant and material facts that are well pleaded and all inferences which can be reasonably drawn from those pleadings.' " (quoting *Sharrow v. State Farm Mut. Auto. Ins. Co.*, 306 Md. 754, 768, 511 A.2d 492 (1986))).

**3.** In his Complaint, appellant alleged that he was abused by four priests. For reasons not pertinent here, appellant voluntarily dismissed his case against two of the priests.

did not allege that the Archdiocese knew that Smith was a pedophile.

Appellant asserted that, when his marriage "fell apart" in 1994, he first became aware that he was injured as a result of the sexual child abuse committed by the priests.[4] As a result, in July 1995, appellant filed suit against the priests for battery, negligence, negligent and intentional infliction of emotional distress, and conspiracy. He asserted several claims against the Archdiocese: negligence; negligent and intentional infliction of emotional distress; negligent failure to warn; conspiracy; and negligent hiring, placement, and supervision.

Appellees moved to dismiss the complaint as time-barred. The circuit court granted the motion, adopting appellees' arguments. Ruling from the bench, the court (Perry, J.) noted that Maryland uses the discovery rule, rather than the maturation of harm rule, to determine the accrual of a cause of action for purposes of the statute of limitations. The judge stated that "[t]he Court sees no conceivable way that a person couldn't be cognizant of an actionable injury[,] where something like this occurred[,] for a period of seventeen years." Because appellant reached the age of majority in 1978, she held that the statute of limitations barred all of appellant's claims no later than sometime in 1981.

### Discussion

### I.

When ruling on a motion to dismiss, the trial court must decide whether the complaint states a claim, assuming the truth of all well-pleaded facts in the complaint and taking all inferences from those facts in the light most favorable to the Plaintiff. *Sharrow v. State Farm Mut. Ins. Co.*, 306 Md. 754, 762, 511 A.2d 492 (1986); *Tadjer v. Montgomery Co.*, 300 Md. 539, 542, 479 A.2d 1321 (1984); *Lemon v. Stewart*, 111 Md.

---

4. In argument before the circuit court, appellant's counsel also averred that, in 1995, appellant confronted the Archdiocese about the abuse and discovered, to his great shock, that the Archdiocese had long been aware that at least one of the priests had habitually molested children.

App. 511, 517, 682 A.2d 1177 (1996). "Dismissal is proper only if the facts and allegations . . . would . . . fail to afford plaintiff relief if proven." *Faya v. Almaraz,* 329 Md. 435, 443, 620 A.2d 327 (1993) (collecting cases). If it is apparent from the face of the complaint that the action is barred by the statute of limitations, the complaint fails to state a claim upon which relief can be granted and the statute of limitations can be the grounds for a motion to dismiss. *G & H Clearing and Landscaping v. Whitworth,* 66 Md.App. 348, 503 A.2d 1379 (1986); *see also Antigua Condominium Ass'n v. Melba Investors Atlantic, Inc.,* 307 Md. 700, 711 & n. 5, 517 A.2d 75 (1986).

The Legislature has settled upon a three-year period of limitations as a reasonable time to bring suit in most cases. The parties agree that the applicable statute of limitations in this case is set forth in Maryland Code (1974, 1995 Repl.Vol.), § 5–101 of the Courts and Judicial Proceedings Article ("C.J."). It provides:

> A civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced.

■ Although the Legislature has chosen to create some exceptions to the general rule, it has not created an exception for victims of childhood sexual abuse.[5] "[W]here the legislature has not expressly provided for an exception in a statute of limitations, the court will not allow any implied or equitable exception to be engrafted upon it." *Booth Glass Co. v. Huntingfield Corp.,* 304 Md. 615, 623, 500 A.2d 641 (1985).

---

5. We observe that House Bill 326 (1994), intended to create just such an exception, failed in the House Judiciary Committee. The proposed exception provided in relevant part:

> (B) An action for damages arising out of an alleged incident or incidents of sexual abuse that occurred while the victim was a minor shall be filed within 12 years of the later of:
> (1) The victim's 21st birthday; or
> (2) The date on which the victim knew or reasonably should have known of the alleged abuse.

While the parties do not dispute the applicability of C.J. § 5–101, they vigorously controvert the accrual date of appellant's claims. "The question of when a cause of action accrues is left to judicial determination." *Booth Glass*, 304 Md. at 619, 500 A.2d 641.

"[T]he purposes of statutes of limitation are to provide adequate time for a diligent plaintiff to bring suit as well as to ensure fairness to defendants by encouraging prompt filing of claims." *Hecht v. Resolution Trust Corp.*, 333 Md. 324, 338, 635 A.2d 394 (1994). Statutes of limitation thus strike a balance between protecting the interests of a plaintiff who pursues his claim diligently and allowing repose to a potential defendant. *Doe v. Maskell*, 342 Md. 684, 679 A.2d 1087 (1996); *Pennwalt Corp. v. Nasios*, 314 Md. 433, 437–38, 550 A.2d 1155 (1988). They are intended "to ensure fairness by preventing 'stale' claims." *Edmonds v. Cytology Services of Maryland, Inc.*, 111 Md.App. 233, 244, 681 A.2d 546 (1996) *cert. granted*, 344 Md. 330, 686 A.2d 635 (1996). In a recent case involving child sexual abuse, the Court of Appeals observed that "[s]tatutes of limitation find their justification in necessity and convenience rather than in logic. They represent expedients rather than principles." *Maskell*, 342 Md. at 689, 679 A.2d 1087 (citations omitted). What the Court said in *McMahan v. Dorchester Fertilizer Co.*, 184 Md. 155, 159–60, 40 A.2d 313 (1944), is also pertinent here:

Statutes of limitations are remedial legislation and rest upon sound public policy, for they are enacted to afford protection against stale claims after a lapse of time which ought to be sufficient for a person of ordinary diligence, and after which the defendant might be placed at a disadvantage by reason of long delay. By requiring persons to seek redress by actions at law within a reasonable time, the Legislature imposes a salutary vigilance and puts an end to litigation. Accordingly, the Courts should refuse to give statutes of limitations a strained construction to evade their effect.

Historically, a cause of action in Maryland accrued for purposes of the statute of limitations on the date that the wrong occurred. *Hahn v. Claybrook*, 130 Md. 179, 182, 100 A.

83 (1917). The "date of wrong" accrual rule barred recovery for an injury that was not discovered until after the statute of limitations period had expired, and made no distinction between a "blamelessly ignorant" plaintiff and a plaintiff who had "slumbered on his rights." *Maskell,* 342 Md. at 690, 679 A.2d 1087 (citations omitted).

Recognizing the harshness of this rule, however, the Court of Appeals replaced the "date of wrong" rule with the "discovery rule" in civil cases, by which the action is deemed to accrue on the date when the plaintiff knew or, with due diligence, reasonably should have known of the wrong. *Maskell,* 342 Md. at 690, 679 A.2d 1087. Nevertheless, the cause of action does not accrue until all elements are present, including damages, however trivial. *Mattingly v. Hopkins,* 254 Md. 88, 95, 253 A.2d 904 (1969); *Baker, Watts & Co. v. Miles & Stockbridge,* 95 Md.App. 145, 187, 620 A.2d 356 (1993); *American Home Assurance v. Osbourn,* 47 Md.App. 73, 86, 422 A.2d 8 (1980).

The discovery rule, applied first to medical malpractice cases, was later expanded to apply to other forms of professional malpractice. *Maskell,* 342 Md. at 690, 679 A.2d 1087 (collecting cases). In *Poffenberger v. Risser,* 290 Md. 631, 431 A.2d 677 (1981), the Court of Appeals expanded the applicability of the discovery rule generally to all civil cases, in order to "prevent ... injustice." *Poffenberger,* 290 Md. at 636, 431 A.2d 677. Under the discovery rule, the statute of limitations is activated based on

> actual knowledge—that is express cognition, or awareness implied from "knowledge of circumstances which ought to have put a person of ordinary prudence on inquiry [thus, charging the individual] with notice of all facts which such an investigation would in all probability have disclosed if it had been properly pursued. In other words, a [person] cannot fail to investigate when the propriety of the investigation is naturally suggested by circumstances known to him; and if he neglects to make such inquiry, he ... must suffer from his neglect."

*Id.* at 637, 431 A.2d 677 (quoting *Fertitta v. Bay Shore Dev. Corp.,* 252 Md. 393, 250 A.2d 69 (1969)) (internal citations omitted); *see also Pennwalt Corp.,* 314 Md. at 448–49, 550 A.2d 1155; *Baker, Watts & Co.,* 95 Md.App. 145, 620 A.2d 356.

The discovery rule is not a rigid rule, however. Rather, the Court of Appeals has "retained ... the power to shape the contours of the discovery rule." *Maskell,* 342 Md. at 691, 679 A.2d 1087. Thus, the operation of the discovery rule is determined by the Court. *See O'Hara v. Kovens,* 305 Md. 280, 286, 503 A.2d 1313 (1986). *See also Trimper v. Porter-Hayden,* 305 Md. 31, 47, 501 A.2d 446 (1985) (holding date of accrual for latent disease actions occurs at the earlier of discovery or death); *Pennwalt Corp.,* 314 Md. at 452, 550 A.2d 1155 ("[T]he discovery rule in a product liability action requires that the statute of limitations should not begin to run until the plaintiff knows or ... should know of injury, its probable cause, and either manufacturer wrongdoing or product defect.").

In making a determination as to when the statute of limitations accrues in a particular circumstance, a court must do so "with awareness of the policy considerations unique to each situation." *Hecht,* 333 Md. at 338, 635 A.2d 394. As we noted, the determination of when a cause of action accrues under the discovery rule is usually a determination made by the court. *Poffenberger,* 290 Md. at 633, 431 A.2d 677; *Lombardi v. Montgomery County,* 108 Md.App. 695, 711, 673 A.2d 762 (1996). When the viability of a statute of limitations defense hinges on a question of fact, however, the factual question is ordinarily resolved by the jury, rather than by the court. *Id.; O'Hara,* 305 Md. at 299, 503 A.2d 1313; *Morris v. Osmose Wood Preserving,* 99 Md.App. 646, 664, 639 A.2d 147 (1994), *rev'd in part on other grounds,* 340 Md. 519, 667 A.2d 624 (1995). " 'Depending upon the nature of the assertions being made with respect to the limitations plea, th[e] determination [of whether the action is barred] may be solely one of law, solely one of fact or one of law and fact.' " *Lombardi,* 108 Md.App. at 711, 673 A.2d 762 (quoting *Poffenberger v. Risser,* 290 Md. 631, 634, 431 A.2d 677 (1981)).

## II.

■ In essence, we must decide at what point in time an adult who was repeatedly sexually abused or battered as a child is put on inquiry notice that the conduct constituted an actionable "wrong". *See Russo v. Ascher,* 76 Md.App. 465, 470, 545 A.2d 714 (1988). We must also determine when the wrong actually occurred.

We observe that the Complaint states that the sexual acts were "non-consensual." Apparently, appellant retreated from that position at the motion hearing. There, counsel argued that while Doe was aware of the priests' conduct, he did not appreciate the offensiveness of the contact or realize that he had been harmed until he reached the age of thirty-three. Rather, at the time of the abuse, because of his age and his relationship to the priests, appellant believed that the priests' conduct was "right and natural", and he thus did not know that he had been battered. Consequently, appellant argued that none of his claims against the priests accrued until 1994, when his marriage "deteriorated [and] he discovered that [the priests'] conduct had injured him." Counsel for appellant explained:

> [The defendant priests] used their position of power and trust and the confidence that was generated by that relationship to consistently, and in furtherance of their own sexual pleasure, take advantage of this boy. These people were charged with responsibility for knowing right from wrong and serving as examples to society and this boy. They obscured those notions of right and wrong and they transformed wrong into right, making this child believe that what was happening to him was natural and an ordinary course of events in his life. Now, this isn't a case about repressed memory. It's a case about when you discover that you have been injured. A battery is an offensive touching. *If you reasonably believe that you have not been offensively touched and have not been injured, you do not know that there has been a battery....* [I]f you are consistently taken advantage of because of your youth and

the relationship between yourself and this priest and the series of priests, over a period of time, and you're told that this is right and you're told that it's natural and you're told that it's part of what—something that should go on in your life and part of your growing process, which you and I, sitting here today, know to be rationally irrational and wrong and morally decadent, and this conduct goes over time for a period of five or six years, *you begin to think that it's right and natural.* (Emphasis supplied.)

 Although appellant asserted numerous claims in his suit, they all arose from the sexual abuse that he endured. Clearly, the abuse itself constituted a battery. A battery is the intentional, unpermitted touching of the body of another that is harmful or offensive to the person who was touched. *Ghassemieh v. Schafer*, 52 Md.App. 31, 38, 43, 447 A.2d 84 (1982). "The gist of the action is . . . absence of consent to the contact on the plaintiff's part." *Id.* Accidental or inadvertent contact does not amount to a battery, however. *Janelsins v. Button*, 102 Md.App. 30, 35, 648 A.2d 1039 (1994). Thus, an action against a tortfeasor for battery allows recovery for "intentional invasions of the interests in freedom from harmful or offensive contact." *Janelsins*, 102 Md.App. at 35, 648 A.2d 1039 (quoting Fowler v. Harper, et al., THE LAW OF TORTS, § 3.3 at 272–73, 276 (2d ed. 1986)).

The case of *Cooksey v. Portland Public School Dist. No. 1*, 143 Or.App. 527, 923 P.2d 1328 (1996) illustrates that an actionable wrong occurred when the battery happened. There, the plaintiff brought suit for battery and negligence arising out of an unlawful sexual contact. *Id.* at 529, 923 P.2d at 1329. The court determined that the claim was barred by the applicable statute of limitations, notwithstanding the plaintiff's contention that her causes of action only accrued months later when she began to exhibit adverse symptoms. *Id.* In rejecting that argument, the court said that plaintiff's claims accrued at the time the inappropriate touching occurred, because that is when she suffered "an invasion of a legally protected interest." *Id.* at 534, 923 P.2d at 1332. What the court said is pertinent here: "That plaintiff later experienced

physical and emotional symptoms resulting from the same incidents does not mean that the claims arising out of those incidents accrued later." *Id.* In the same way, appellant suffered "an invasion of a legally protected interest" immediately when the batteries actually occurred, even if his problems worsened over time.

In analyzing the timeliness of appellant's claims, we find the Court's decision in *Maskell,* 342 Md. 684, 679 A.2d 1087, decided shortly after the parties submitted their briefs, instructive. There, the Court of Appeals concluded that repression of childhood sexual abuse does not toll the statute of limitations. The Court noted that the scientific community has not reached a consensus on the validity of repression theory, and the theory remains controversial. *Id.* at 694, 679 A.2d 1087. It also considered the legal impact of giving credence to the repression theory when there is no way to prevent the possibility of therapist-influenced "recovered" memories. *Id.* at 695, 679 A.2d 1087. Finally, the Court found that there is no persuasive empirical evidence to support the claim that repression of memory exists as a phenomenon distinct from forgetting. *Id.* at 695, 679 A.2d 1087. With regard to "forgetting," the Court said:

> It is crystal clear that in a suit in which a plaintiff "forgot" and later "remembered" the existence of a cause of action beyond the 3-year limitations period, that suit would be time-barred. Dismissal of such a case reflects our judgment that the potential plaintiff had "slumbered on his rights," should have known of his cause of action, and was blameworthy. To permit a forgetful plaintiff to maintain an action would vitiate the statute of limitations and deny repose for all defendants.

*Id.* at 692, 679 A.2d 1087.

The repression theory posits two models of repression: "serial" repression, in which the memory of a traumatic event is repressed soon after it occurred, and "collective" repression, in which all the memories are repressed at the same time, perhaps many years after the occurrence of the last episode of

abuse. *Id.* at 687–88 n. 3, 679 A.2d 1087. The Court noted that, even if it were to recognize the repression theory, in a case of "collective" repression, "if [the victims] had not yet repressed the memories of the sexual assault by the defendants *by even the day after their attaining majority,* the statute of limitations barred these claims three years after their eighteenth birthdays. . . ." *Id.* (emphasis supplied). Therefore, under a repression theory, the repression itself would have had to occur while the victim was protected by the disability of infancy. If, however, any memory of sexual abuse suffered during childhood survives into adulthood, the statute of limitations begins to run when the victim reaches the age of majority and the disability of infancy is lifted. Nevertheless, the Court ultimately held that even if no memory at all survives into adulthood, the limitations period still begins to run on the date the victim reaches the age of majority.

In contrast to the victims in *Maskell,* Doe concedes that he retained memories of the underlying conduct throughout his adulthood, although he denies that he knew the conduct was actionable or wrongful. Because the Court in *Maskell* refused to allow an exception that would delay the accrual date of a cause of action for situations in which the victim has no recollection whatsoever of abuse, we decline to fashion a lesser exception for a victim who was aware of the acts but did not appreciate at the time that they were wrong, or did not realize until years later that he was harmed.

■ The victims in *Maskell* also advanced an alternative argument for tolling the statute of limitations. They argued that their repressed memories constituted mental incompetence for purposes of the statute of limitations, and that the disability of incompetence thus kept their claims viable. They relied on C.J. § 5–201, which provides:

(a) *Extension of time.*—When a cause of action . . . accrues in favor of a minor or mental incompetent, that person shall file his action within the lesser of three years or the applicable period of limitations after the date the disability is removed.

In rejecting their argument, the Court said: "We conclude that ... [o]nly those plaintiffs who are insane and 'unable to manage [their] business affairs or estate, or to comprehend [their] legal rights or liabilities' are able to take advantage of § 5–201." *Maskell,* 342 Md. at 698, 679 A.2d 1087 (quoting *Decker v. Fink,* 47 Md.App. 202, 207, 422 A.2d 389 (1980)); *accord Travis v. Ziter,* 681 So.2d 1348; *Lovelace v. Keohane,* 831 P.2d 624 (Okla.1992); *O'Neal v. Division of Family Services,* 821 P.2d 1139 (Utah 1991). Here, Doe argues that he was unable to understand that the non-consensual sexual acts forced upon him by the priests were wrongful. While he does not invoke C.J. § 5–201, he argues that, under general discovery rule principles, the limitations period should be tolled. Under *Maskell,* this argument must fail, because Doe does not allege that he had a disability amounting to insanity that would overcome the presumption of legal competence upon attaining the age of majority.

Appellant also urges us to analogize his case to the latent disease line of cases, for which the statute of limitations does not accrue until the plaintiff knew or reasonably should have known of the nature and cause of the harm. He bases this assertion on his claim that he did not know of the nature of the harm until his marriage "fell apart" in 1994. *See Penn-walt Corp.,* 314 Md. at 453, 550 A.2d 1155; *Pierce v. Johns–Manville Sales Corp.,* 296 Md. 656, 663, 464 A.2d 1020 (1983). We find the latent disease cases inapposite. Application of the discovery rule in latent disease cases is premised on the idea that a disease in its latent stage is "unknown and inherently unknowable." *Wilson v. Johns–Manville Sales Corp.,* 684 F.2d 111, 117 (D.C.Cir.1982) (quoting *Urie v. Thompson,* 337 U.S. 163, 169, 69 S.Ct. 1018, 1024, 93 L.Ed. 1282 (1949)); *see also Harig v. Johns–Manville Products Corp.,* 284 Md. 70, 80, 394 A.2d 299 (1978) (stating that latent disease is "undiscoverable"). The harm resulting from the intentional tort of sexual battery is simply not "inherently unknowable" to a reasonable person.

If we were to adopt appellant's position, a plaintiff "would be in subjective control of the limitations period." *Travis,* 681

So.2d at 1355. This would defeat the twin goals of promoting diligent pursuit of viable claims, and allowing repose to defendants when claims have become stale. While we sympathize with the plight of people who have been sexually abused as children, and whose perceptions may have been skewed by such a reprehensible breach of trust committed by persons in positions of authority, the notice that one has been wronged by the intentional tort of battery is so qualitatively different from the inherently unknowable latent disease, that the analogy is simply not useful. *See Sears, Roebuck and Co. v. Ulman,* 287 Md. 397, 412 A.2d 1240 (1980) (stating that a potential tort plaintiff is usually immediately aware of wrongdoing).

A number of other jurisdictions have considered various arguments similar to those advanced by appellant. The case of *E.J.M. v. Archdiocese of Philadelphia,* 424 Pa.Super. 449, 622 A.2d 1388 (1993), is particularly instructive, as it presented a situation almost identical to the argument advanced by appellant in this case. There, a priest who was acting as a mentor for an adolescent boy sexually abused the child over a number of years. The priest represented the sexual acts as "therapy . . . necessary for [the boy's] spiritual growth," *Id.* at 452, 622 A.2d at 1389 so that the boy "never considered that [the defendant priest's] actions were abusive and injurious" to him. *Id.* at 452, 622 A.2d at 1390. The court affirmed the grant of summary judgment in favor of the defendant priest, holding that the assertion by the victim that he did not know that the acts constituted abuse was "not relevant to a discovery rule analysis." *Id.* at 461, 622 A.2d at 1394. The court reasoned:

> This is simply not a case where the plaintiff, despite the exercise of objectively measured reasonable diligence, *could not* know of his injury and its cause within the limitations period. Appellant admits that he knew the abuse was occurring and who was inflicting it, both when it happened and throughout the eight years after the abuse ended and before appellant sued. . . . *[A]ppellant need not have known that what was happening to him was "abuse," i.e. was wrongful, or precisely what type of psychological or*

*emotional harm he would suffer as a result. Once he knew what was happening and who was doing it, he had the duty to investigate these questions and to institute suit within the limitations period.*

*Id.* at 460–61, 622 A.2d at 1394 (second emphasis supplied).

In *DeRose v. Carswell,* 196 Cal.App.3d 1011, 242 Cal.Rptr. 368 (1987), the plaintiff alleged that childhood sexual abuse by her step-grandfather "caused her to develop 'psychological mechanisms' and 'psychological illnesses' which 'prevented her from knowing, recognizing and understanding the nature or extent of her injuries . . . and the causal relationship between her present injuries and defendant's past acts.'" *Id.* at 1018, 242 Cal.Rptr. at 371–372 (quoting appellant's complaint). Appellant averred that she was not aware that the abuse proximately caused her psychological injuries until many years later. *Id.* at 1017, 242 Cal.Rptr. at 371. She did not, however, claim that she had repressed her memories. *Id.* at 1018, 242 Cal.Rptr. at 371. The court affirmed the motion to dismiss on statute of limitations grounds, concluding that the discovery rule did not delay the accrual of her claim. The court noted that there was no allegation that the plaintiff had repressed her memories of abuse, and that plaintiff was "aware" that a "wrongful act" had been committed against her. *Id.* at 1019, 242 Cal.Rptr. at 372.[6]

 We note that the instant case is readily distinguishable from *Edmonds v. Cytology Services of Maryland, Inc.,* 111 Md.App. at 244, 681 A.2d 546, involving a medical malpractice claim arising out of a negligent failure to diagnose the patient's cancer. There, we construed the term "injury" for purposes of determining the date of accrual of a cause of

---

6. Appellant asserts in his reply brief that *DeRose,* 196 Cal.App.3d 1011, 242 Cal.Rptr. 368, has been superseded by statute. Cal.Civ.Proc.Code § 340.1 (Deering 1996). Section 340.1, however, *predates DeRose,* and the *DeRose* court specifically held that § 340.1 "does not mandate application of the delayed discovery doctrine in any particular case." *DeRose,* 196 Cal.App.3d at 1020, 242 Cal.Rptr. at 373. Appellant cites no amendments to § 340.1 that would supersede the holding in *DeRose.*

action under C.J. § 5–109(a), which contains the statute of limitations in medical malpractice actions. An injury occurs when, as a result of the defendant's tortious act or omission, a patient first sustains compensable damages or harm that can be proven with reasonable certainty. *Id.* at 262, 270, 681 A.2d 546. The injury may be concurrent with the doctor's negligence, or it may occur much later, but it may also occur well before the patient discovers the harm. *Id.* at 270, 681 A.2d 546. In a case of battery, however, the invasion of the victim's dignitary interest is invariably concurrent with the actions that constitute the intentional tort itself. Thus, compensible harm occurs at the time of the battery, regardless of whether the victim is aware that the act is wrong or of the full extent of the harm. *See, e.g. Pierce,* 296 Md. at 668, 464 A.2d 1020 (rejecting "maturation of harm" rule of accrual).

## III.

■ Appellant sued the Archdiocese on theories of negligence, negligent and intentional infliction of emotional distress, negligent failure to warn, negligent hiring, placement and supervision, and conspiracy. Appellant argues that his claims against the Archdiocese did not accrue until 1995, when he confronted the Archdiocese and was informed that the Archdiocese had long known that at least one of the involved priests had a history of pedophilia.

Appellant seems to distinguish the notice of harm that occurred at the hands of the priests in 1994, when his marriage "fell apart", from the notice of wrongdoing by the Archdiocese in 1995, arising from its admission that it was aware of the abuse by a former priest. His argument rests on the assumption that he had no way to know of any wrongdoing by the Archdiocese, because of its "clandestine[ ]" acts. Appellant therefore argues that his claims against the Archdiocese fall under an exception to the general rule of accrual, provided in C.J. § 5–203. The section is entitled "Ignorance of cause of action induced by fraud." It states:

> If the knowledge of a cause of action is kept from a party
> by the fraud of an adverse party, the cause of action shall be

deemed to accrue at the time when the party discovered, or by the exercise of ordinary diligence should have discovered the fraud.

In order to invoke C.J. § 5–203, a plaintiff must properly plead fraud with particularity. *Bennett Heating v. NationsBank*, 342 Md. 169, 190, 674 A.2d 534 (1996); *Antigua Condominium*, 307 Md. at 735, 517 A.2d 75; *Tucker v. Woolery*, 99 Md.App. 295, 304, 637 A.2d 482, *cert. dismissed*, 336 Md. 280, 648 A.2d 192 (1994). Thus, "[g]eneral or conclusory allegations of fraud are insufficient. A plaintiff must allege facts which indicate fraud or from which fraud is necessarily implied." *Antigua Condominium*, 307 Md. at 735, 517 A.2d 75. Moreover, the complaint relying on the fraudulent concealment doctrine must also contain specific allegations of how the fraud kept the plaintiff in ignorance of a cause of action, how the fraud was discovered, and why there was a delay in discovering the fraud, despite the plaintiff's diligence. *Villarreal v. Glacken*, 63 Md.App. 114, 131, 492 A.2d 328 (1985); *Associated Realty Co. v. Kimmelman*, 19 Md.App. 368, 311 A.2d 464 (1973). What we said in *Finch v. Hughes Aircraft Co.*, 57 Md.App. 190, 241–42, 469 A.2d 867, *cert. denied*, 300 Md. 88, 475 A.2d 1200 (1984), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1190, 84 L.Ed.2d 336 (1985), is also pertinent here:

> [T]he burden is on Plaintiffs to prove that they did not discover the alleged wrong more than three years before they filed suit and that this lack of discovery was not due to Plaintiffs' unreasonable failure to exercise ordinary diligence. *A plaintiff who involves Section 5–203 of the Courts and Judicial Proceedings Article must "show affirmatively that he was kept in ignorance of his right of action by the fraud" of defendant,* [citation omitted] and "must specifically allege and prove when and how his knowledge of the fraud was obtained, so that the court will be enabled to determine whether he exercised reasonable diligence to ascertain the facts." [citation omitted].

(Emphasis supplied.)

Appellant's Complaint is divided into sixteen separate counts, each with a title. Not one is entitled "fraud." Nor are

facts alleged in any of the counts from which fraud may be inferred. For example, the conspiracy count against the Archdiocese alleges:

> As evidence of this conspiracy, upon discovery of Schaefer's compulsive sexual molestation of children, the Archdiocese systematically and clandestinely participated in the transfer of Schaefer, and on information and belief, other named priests, and accepted them for placement in new parishes without reporting their criminal sexual misconduct to law enforcement authorities or revealing to new parishioners, Plaintiff or his family, Schaefer's and other sexual history and propensities for the sexual molestation of youth, holding Schaefer out to new parishes as competent, fit and moral despite actual knowledge to the contrary.

Similarly, in the negligence count against the Archdiocese, appellant alleges that the Archdiocese "negligently and recklessly assisted [the defendant priests] in suppressing public knowledge of [the defendant priests'] *prior* history of sexual molestation of parish youth." (Emphasis supplied.)

We reject the contention that these allegations are sufficient to toll the statute. There is not a single specific allegation of conduct on the part of the Archdiocese that kept Doe in ignorance of his claims. To the contrary, when the priests molested Doe, he was immediately on notice of potential claims against the priests as well as against the Archdiocese as their employer.

The statute of limitations begins to run when the potential plaintiff is on "inquiry notice" of such facts and circumstances that would "prompt a reasonable person to inquire further." *Pennwalt Corp.*, 314 Md. at 447, 550 A.2d 1155. Once on notice of one cause of action, a potential plaintiff is charged with responsibility for investigating, within the limitations period, all potential claims and all potential defendants with regard to the injury. The Court of Appeals has held that "knowledge of the identity of a particular defendant is not a necessary element to trigger the running of

the statute of limitations." *Conaway v. State,* 90 Md.App. 234, 253, 600 A.2d 1133 (1992).

Nowhere does Doe allege that, once he inquired of the Archdiocese, the Church negligently or deliberately mislead him as to what it knew about the priests. Doe's allegations are insufficient to bring the Complaint within the doctrine of fraudulent concealment. First, the Complaint alleges neither specific facts to support a claim for fraud, nor any facts from which fraud can be implied. Second, as we observed earlier, fraudulent concealment requires that the complaint articulate how the plaintiff learned of the fraud, and why a diligent plaintiff could not discover it sooner. *Villarreal,* 63 Md.App. at 131, 492 A.2d 328. Appellant's Complaint fails to satisfy this requirement. Third, the alleged wrongdoing described in the portions of the Complaint quoted above occurred antecedent to the sexual battery that harmed appellant; appellant is alleging that, at some time *before* he was abused, the Archdiocese knowingly put the priests in a position to abuse him by concealing *prior* incidents in which the priests abused other children. This cannot support a claim that the Archdiocese concealed a cause of action from appellant; appellant does not allege that *after* the priests abused appellant, the Archdiocese committed a fraud that prevented appellant from knowing of its wrongdoing or from discovering his claims.

In *Conaway,* 90 Md.App. 234, 600 A.2d 1133, an inmate filed suit against the State for injuries to his hand and subsequent negligent medical care. Despite having filed a timely action against the State and having conducted discovery, the plaintiff did not learn until after the limitations period had run that the medical care was actually provided by a private healthcare provider under contract with the State. The statute of limitations barred his claim against the private contractor.

Similarly, in *Ferrucci v. Jack,* 255 Md. 523, 258 A.2d 414 (1969), the plaintiff did not discover until more than three years after filing suit against a corporation for injuries sustained while on the grounds of an apartment complex that the named defendant corporation did not own the building. Plain-

tiff could have established ownership of the building by examining land records, and his failure to do so showed a lack of ordinary diligence. The statute of limitations therefore barred plaintiff's claim against the true owner of the apartment complex. *Id.* at 525–26, 258 A.2d 414.

In sum, Doe failed timely to pursue his claims against the priests and the Church. There are no facts alleged that support a claim that Doe could not have discovered the claims against the Archdiocese, if he had ever attempted to do so. In our view, appellant had inquiry notice of his potential claims against the Archdiocese, as the priests' employer. Therefore, for the same reasons that the claims against the priests are untimely, his claims against the Archdiocese must fail. Under the circumstances before us, we conclude, as a matter of law, that the circuit court properly dismissed all of the claims against the priests and the Archdiocese, based on the statute of limitations.

**JUDGMENTS AFFIRMED. COSTS TO BE PAID BY APPELLANT.**