# J. SHAAFF STOCKETT, Adm'r of THOS. M. LOCKE, *vs.* ZADOCK SASSCER.

Where a plaintiff files a replication to the plea of limitations and the defendant joins issue thereon, any irregularity as to the *time* of filing the plea is thereby *waived.*

An acknowledgment to take a case out of the statute of limitations must be of a *subsisting* debt and equivalent to an implied promise to pay, and unaccompanied by any qualification or declaration, which, if true, would exempt the party from a moral obligation to discharge it.

The *whole* admission or conversation must be taken together, as well the acknowledgment as all qualifications or conditions, and one or more *isolated* expressions should not be seized upon.

Where a party admits the debt, but at the same time resists the payment of it, by alleging that he has a set-off and that the plaintiff owes him more money, it will not remove the bar of the statute.

Stockett, Adm'r of Locke, *vs.* Sasscer.

Where a defendant, in conversation with the plaintiff, about the claim said in substance, that he would not plead limitations to a just debt, but that plaintiff's debt was not just, because it had been over-paid, it is not sufficient to take the claim out of the statute.

Where a debt is barred a *naked* promise *not to plead* the statute will not bind the defendant, though a promise to pay will be sustained as founded on the consideration of the original claim.

Where there are disputed accounts on both sides and each party claims a balance from the other, denying at the same time that he owes the other anything, an agreement to refer will not remove the bar of the statute.

If the acknowledgment be accompanied by such qualifying expressions or circumstances as repel the idea of an intention or contract to pay, no implied promise is created.

The acknowledgment must go to the fact, not only that the claim was originally just, but that it is *still due*.

APPEAL from the Circuit Court for Prince George's county.

*Assumpsit* instituted by the appellant's intestate against the appellee upon an open account, commencing in June 1845 and ending in August 1848. The suit was begun on the 29th of September 1852. The defendant appeared by attorney at the following November term of the court. The *nar* was filed on the 22nd of March 1853, containing the common money *counts, accompanied* by a copy of the account on which the suit was brought. The plaintiff, Locke, died in July 1853, and his death was suggested at the following November term of the court, and at April term 1854, the appellant, as his administrator, was permitted to appear and prosecute the suit. On the 4th of April 1854, the pleas of *non assumpsit* and *limitations* were filed. The docket entries in the case, however, show that the plea of *non assumpsit* had been filed on the 11th of October 1853. On the 6th of April 1854, the plaintiff joined issue upon the plea of *non assumpsit,* and on the same day entered the general replication to the plea of limitations, on which issue was joined. The record also shows that on the same day, (6th of April 1854,) the plaintiff entered a *ne recipiatur* to the plea of limitations, but this motion the court overruled, and the case was then tried upon issues joined on *both* pleas.

*1st. Exception.* Before the jury was sworn the plaintiff

moved the court not to receive the plea of limitations, upon the ground that it was not pleaded in time, according to the rules of court, which are set out in the record. The *first* of these rules fixes the first Monday in March and the second Monday in September as the *plea days* of the court. The second directs, that whenever a declaration or other plea shall be filed by the rule day to any term, the clerk shall thereupon lay a rule upon the opposite party to plead or reply to the same, which rule shall go to the fourth day of the ensuing term, and "any plea of limitations not filed within the said time shall not be received by the court." He then proved that the *nar* was filed on the 22nd of March 1853, and rule plea was laid on that day, and that the plea of limitations in this case was not filed until the 4th of April 1854, and offered the docket entries in the case to establish this fact. The court (CRAIN, J.) overruled the *ne recipiatur*, being of opinion, that under the facts stated, the plea was filed in time under the rules of court. To this ruling the plaintiff excepted.

*2nd Exception.* The plaintiff proved the items in his account to be correct, and then proved by H. C. Scott, the facts which are stated in the opinion of this court, and then asked the court to instruct the jury, that if they found these facts to be true, the plaintiff's claim, to the extent they might find the same proved, was not barred by the statute of limitations pleaded in this case, but the court refused this prayer and instructed the jury, that if they found the facts as stated, they must find a verdict for the defendant upon the plea of limitations on the second issue. To these rulings the plaintiff excepted.

The verdict was in favor the plaintiff upon the *first* issue, and of the defendant upon the *second*, upon which judgment was given for the defendant, and the plaintiff appealed.

The cause was argued before LE GRAND, C. J., ECCLESTON and TUCK, J.

*J. Shaaff Stockett* for the appellant, argued:

1st. That the defendant having been laid under rule plea,

on the 22nd of March 1853, and having plead *non assumpsit* on the 11th of October 1853, could not legally be permitted to plead limitations on the 4th of April 1854. The suit did not abate by the death of the plaintiff, and the defendant should have filed his plea of limitations by the rule day in September 1853. *4 G. & J.*, 381, *State vs. Green.* *2 H. & G.*, 79, *Wall vs. Wall.*

2nd. Even if the plea was properly in, yet his declaration, that "no time nor limitations was to him a bar to a just debt," and his agreement with the plaintiff to submit all the matters in dispute between them to arbitration, and the selection of a referee for such a purpose are sufficient to avoid the plea. *4 H. & J.*, 527, *Chapman vs. Dixon.* *1 H. & G.*, 216, *Oliver vs. Gray.* *6 Gill*, 82, *Guy vs. Tams.* *7 Gill*, 85, *Ellicott vs. Nichols.* *2 G. & J.*, 296, *Keplinger vs. Griffith.* *1 Bland*, 85, *McMechen vs. Chase.* The plea of limitations was tacitly waived by filing the plea of *non assumpsit.* *2 Bland*, 41, 42, *Welch vs. Stewart.* In this conversation each party claimed a *balance* as due upon a proper and just settlement of their claims, and this avoids the plea. This very point was decided in *3 Mason*, 458, *Ellis vs. Jarvis.* He expressly declares, if the debt was *just* he would pay it, and this is sufficient. *2 Bailey's Rep.*, 425, *Lowry vs. Dubose.* An express promise not to plead the statue is, in every sense, as much an admission of the debt as the giving of a *new note. Conference Rep.*, *(N. C.,)* 225, *Colking vs. Thackston.*

No counsel argued for the appellee.

TUCK, J., delivered the opinion of this court.

It appears by the docket entries set out in the first exception, and also from the pleadings in the cause, that the plaintiff had filed his replication to the plea of limitations, to which the defendant had joined issue, before the *ne recipiatur* was entered to that plea. The irregularity, if any, as to the time of filing the plea was thereby waived, and we approve of the court's refusal to strike it from the rolls. *3 Ch. Genl. Pr.*, 461, 509. *Macnamara on Nullities and Irregularities*, 17, 18, 171. *1 Sellon's Pr.*, 102. *6 H. & J.*, 272, *Benson vs. Davis.*

48    v.8

The *second* exception was taken to the rulings of the court upon the evidence applicable to the plea of limitations. The suit is in *assumpsit* on an account running from June 1845 to August 1848, embracing numerous transactions of large amounts between the defendant and the plaintiff's intestate. *Non assumpsit* and limitations were pleaded. It appears that "in 1850, a controversy arose between the plaintiff and defendant, in the presence of the witness, as to the state of the accounts between them, in which the plaintiff claimed a balance due him of upwards of $600. The defendant said that he did not owe said balance, and that upon a just settlement the plaintiff was in his debt, and observed to the plaintiff, why do you not sue me? to which plaintiff replied, it was useless to sue as the account was out of date; the defendant answered, no time nor limitations was to him a bar to a just debt; that it was then mutually agreed between plaintiff and defendant, to submit the claims and vouchers on either side to the arbitrament of the witness, or to witness and his brother, with a mutual understanding (as witness understood when he accepted the reference) between them, that whoever was found by him indebted was to pay the indebtedness so ascertained, (although nothing was said by either party on that subject.) The defendant said, at the time of the agreement to refer, that Mr. Locke, the plaintiff, owed him, and Mr. Locke said that the balance was due him as appearing by his books." The witness also proved that no award was made.

Upon applying to these facts the principles of the law of limitations as well settled in this State, we do not perceive that the appellant can claim a reversal of the judgment. It has been often ruled in this court, that the acknowledgment to take a case without the statute must be of a subsisting debt, and equivalent to an implied promise to pay; and it must not be accompanied by any qualification or declaration which, if true, would exempt the party from a moral obligation to discharge it. *Oliver vs. Gray*, 1 *H. & G.*, 204. *Frey vs. Kirk*, 4 *G. & J.*, 509. *Brookes vs. Chesley*, 4 *Gill*, 205. *Duvall vs. Peach*, 1 *Gill*, 172. *Beltzhoover vs. Yewell*, 11 *G. & J.*, 216. *Ellicott vs. Nichols*, 7 *Gill*, 85. *Mitchell vs. Sellman*, 5 *Md. Rep.*, 377.

It is impossible to infer any design on the part of the defendant to recognise or acknowledge liability to Locke from what occurred at the interview between them.    We are not to seize upon one or more isolated expressions, but the whole admission or conversation must be taken together, as well the acknowledgment as all qualifications or conditions.    Now we are told that this conversation commenced by a controversy between the parties; that is, as we suppose, that they were disputing as to the existence of any indebtment at all by Sasscer to Locke.    So far from his intimating any purpose to pay the demand, he invited a suit  by way of  showing that he would not  pay unless compelled by legal process.    More than this, he averred that he had  overpaid what  he had owed, and that a balance was due him by Locke upon a fair statement of the accounts.    The example put under the third resolution, in *Oliver vs.  Gray*, is of  this kind,  "as if the defendant admits the debt, but at the same time resists the payment of it by alleging that he has a set-off against it, and that the plaintiff owes him more money; which virtually amounts to a denial of his liability and a refusal  to pay any part of it, on grounds furnishing a sufficient moral excuse for not paying it."    And the doctrine has been recently recognised in this court, *( Mitchell vs. Sellman*, 5  *Md. Rep.*, 376,) in a case more favorable to the creditor than the present.

It is supposed, however, that the declaration made by defendant, that "no time nor limitation was with him a bar to a just debt," and his agreement to refer the matters of difference to arbitration, are sufficient to avoid this defence.   As before observed, the whole conversation must be taken together. The words now relied upon do not raise an implied promise, if connected with his repeated denials of any just claim against him.    His language amounts to this, and nothing more:—that he would not plead limitations to a just debt, but that Locke's was not just because it had been overpaid.    Even if he had said he would not rely on the plea in bar of this claim, we do not think it would have helped the plaintiff's case, because the debt being barred and  the remedy gone, a  naked promise not to plead the statute would not bind him, although a promise

to pay would be sustained as founded on the consideration of the original claim.

As to the agreement to refer, it has never been decided in this State, as far as we can discover, that it will remove the bar of the statute. A distinguished judge stated, in the case of *Barney vs. Smith,* 4 *H. & J.,* 496, (without, however, referring to any authority,) that such an offer would have this effect; but that was not given as the opinion of the court: and, in *Oliver vs. Gray,* where the court, "feeling the necessity for a more certain and definite understanding of the effect of the adopted construction of the statute," laid down general rules for the practical application of the principles established by the decided cases, we do not find any intimation of the sufficiency of such an acknowledgment, although they had referred to what Lord Mansfield said in *Quantock vs. England,* as to the effect of a submission to a commission of bankruptcy by a debtor, as an answer to the plea of limitations. We suppose, however, that the *dictum* of Mr. Justice Johnson cannot, since the later decisions in this court, be considered as applicable to a case where, as here, there are disputed accounts on both sides, and each party claims a balance from the other, denying at the same time that he owes the other anything. If so applied, it appears to us that the injustice deprecated by the Court of Appeals, in illustrating the *third* rule in *Oliver vs. Gray,* could not well be avoided, if the cross demand of the defendant should be barred at the time of pleading his offset, or if he could not prove it at the trial. What would be the effect of such an agreement in a case of claim on one side only, unaccompanied by any denial on the part of the supposed debtor, we need not now decide. The present record shows a contest between the parties, each claiming a balance from the other, which, we think, must be governed by the principle, (said, in *Angell on Limitations,* 245, to be well established in England and in this country,) "that if the acknowledgment be accompanied by such qualifying expressions or circumstances as repel the idea of an intention or contract to pay, no implied promise is created;" and this view of the question is fully sustained by the Supreme Court, in the case of *Clementson vs. Williams,*

8 *Cranch*, 72, where it was held, that the acknowledgment must go to the fact, not only that the claim was originally just, but that it is still due.    And so in *Bell vs. Morrison*, 1 *Peters*, 351, "if there be no express promise, but a promise is to be raised by implication of law from the acknowledgment of the party, such acknowledgment ought to contain an unqualified or direct admission of a previous subsisting debt, which the party is liable and willing to pay.    If there be accompanying circumstances which repel the presumption of a promise or intention to pay," the remedy will not be revived.

We are of opinion, that considering this whole conversation as proved by the witness, so far from there being any evidence of willingness or intent on the part of the defendant to pay the claim of the plaintiff, it was a denial of any indebtment whatever, and a refusal to pay on grounds which, if true, exempted him from obligation to pay.

*Judgment affirmed.*