919 A.2d 33

Mary C. SWAM, et ux.

v.

UPPER CHESAPEAKE MEDICAL CENTER, INC.

No. 75, Sept. Term, 2005.

Court of Appeals of Maryland.

March 16, 2007.

Andrew H. Baida and Benjamin Rosenberg (Rosenberg/Martin/Funk/Greenberg, LLP of Baltimore, Mark S. Cohen of the Law Office of Mark S. Cohen of Owings Mills), on brief, for appellants.

Barbara L. Ayres (Whiteford, Taylor & Preston L.L.P. of Towson), on brief, for appellee.

Argued before BELL, C.J., WILNER *, CATHELL, HARRELL, BATTAGLIA, GREENE and JOHN C. ELDRIDGE (Retired, Specially Assigned), JJ.

ELDRIDGE, J.

The issue in this case is whether the general statute of limitations barred a claim initially filed in the wrong forum, the Health Care Alternative Dispute Resolution Office

---

* Wilner, J., now retired, participated in the hearing and conference of this case while an active member of this Court; after being recalled pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

("Health Care Office"), and then subsequently filed in the appropriate forum, the Circuit Court for Harford County.[1]

The plaintiffs-appellants, Mary C. Swam and Scott Swam, filed their claim with the Health Care Office based upon an alleged personal injury resulting from an abandoned hypodermic syringe on the premises of the defendant-appellee, Upper Chesapeake Medical Center, Inc. If the injury was a "medical injury" within the meaning of the Health Care Malpractice Claims Act ("Health Claims Act"), the filings of the claim with the Health Care Office and Circuit Court would have been timely. If the injury, although medically-related, was not a "medical injury" within the meaning of the Health Claims Act, the filing in the Circuit Court was untimely unless the filing related back to the time of filing in the Health Care Office.

We agree with the Circuit Court that Mrs. Swam's injury was not a "medical injury" within the meaning of the Health Claims Act. Nonetheless, we shall hold that the Swams' medically-related claim was timely under the general statute of limitations applicable to civil actions, Maryland Code (1974, 2006 Repl.Vol.), § 5–101 of the Courts and Judicial Proceedings Article, because the initial filing in the wrong forum, the Health Care Office, tolled the statute of limitations. The subsequent filing in the Circuit Court, therefore, related back to the initial filing and satisfied the statute of limitations.

## I.

On December 30, 2000, while waiting in an area adjacent to one of Upper Chesapeake's operating rooms, Mary C. Swam put her right hand on a counter and was stuck by an uncapped hypodermic needle. Mrs. Swam was not an Upper Chesapeake patient at the time of the injury, but she was accompa-

---

1. At the time this case arose, the Health Care Alternative Dispute Resolution Office was called the Health Claims Arbitration Office. *See* Health Care Malpractice Claims Act, Maryland Code (1974, 2006 Repl. Vol.), § 3–2A–03 of the Courts and Judicial Proceedings Article. The key statutory provisions involved in this case have not changed, and we shall refer to the office by its new name.

nying her father who was to undergo surgery at the hospital. After being examined in Upper Chesapeake's emergency room, Mrs. Swam returned home with instructions to avoid unprotected sexual intercourse. On January 4, 2001, Mrs. Swam returned to Upper Chesapeake after running a low grade fever and experiencing increased swelling, erythema, and tenderness in her right hand. Upper Chesapeake admitted her and treated her with antibiotics for hand cellulitis. Mrs. Swam returned to Upper Chesapeake two days later, was admitted, and was again treated with antibiotics. In mid-January, Mrs. Swam returned for a third time to Upper Chesapeake with diarrhea and an irritated esophagus due to antibiotic ingestion, and was instructed to stop taking the prescribed antibiotics.

On January 31, 2001, Mrs. Swam's physician diagnosed that she had a deep infection in the soft tissues after she experienced redness and soreness on the back of her right hand. Upper Chesapeake again admitted Mrs. Swam and performed an incision and drainage of an abscess. She was discharged from the hospital on February 4, 2001, with instructions to take antibiotics and pain medications.

Pursuant to the Health Claims Act, Maryland Code (1974, 2006 Repl.Vol.), § 3–2A–04(a) of the Courts and Judicial Proceedings Article,[2] the Swams filed an action with the Health Care Office on December 30, 2003, against Upper Chesapeake. The filing was exactly three years from the date Mrs. Swam was injured on the premises of the hospital. In their complaint, the Swams alleged that Upper Chesapeake was negligent in its "disposal and/or storage of regulated waste and/or contaminated sharps including without limitation, needles." The Swams subsequently filed a Certificate of Qualified Expert and report from Stephen Goldberg, M.D., in accordance with § 3–2A–04(b). Dr. Goldberg, a board-certified physician, stated that it was his opinion, within a reasonable degree of medical probability, that Upper Chesapeake and its agents

---

**2.** Hereafter, all statutory references will be to the Courts and Judicial Proceedings Article of the Maryland Code.

and employees "departed from applicable standards of care" in failing to ensure that "needles were properly disposed of" and that Mrs. Swam was injured as a result of this violation of the applicable standards of care.

After the Swams on May 13, 2004, filed an election to waive arbitration under § 3–2A–06B, the Health Care Office ordered the case transferred to the Circuit Court for Harford County.[3] On May 17, 2004, four days later, the Swams filed a complaint against Upper Chesapeake in the Circuit Court for Harford County. The complaint contained the same allegations, verbatim, as the filing in the Health Care Office. Upper Chesapeake, pursuant to § 3–2A–04(a), responded to the claim and filed a Certificate of Qualified Expert and report by a physician, Dr. Richard Berg, M.D. According to Dr. Berg, the care and treatment provided by Upper Chesapeake, "conformed to, and did not deviate from, accepted standards of care applicable to Health Care Providers in its class." About two months later, Upper Chesapeake moved for summary judgment on the ground that the Circuit Court suit was barred because it was not filed within the three-year general statute of limitations for civil actions.

The general statute of limitations applicable to civil actions, § 5–101, provides that "[a] civil action at law shall be filed within three years from the date it accrues unless another provision of the Code provides a different period of time within which an action shall be commenced." The Swams' May 17, 2004, filing in Circuit Court exceeded this three-year limit. The Swams contended that their action was timely, however, because it conformed with the special statute of limitations provided for claims under the Health Claims Act. Section 5–109(a), entitled "Actions against health care provid-

---

**3.** Section 3–2A–06B(b) provides:

> *"Waiver by claimant.*—(1) Subject to the time limitation under subsection (d) of this section, any claimant may waive arbitration at any time after filing the certificate of qualified expert required by § 3–2A–04(b) of this subtitle by filing with the Director a written election to waive arbitration signed by the claimant or the claimant's attorney of record in the arbitration proceeding. * * * "

ers," contains a special period of limitations for an action based on "an injury arising out of the rendering of or failure to render professional services by a health care provider...." Section 5–109(a) requires that claims be filed with the Health Care Office within the earlier of "(1) Five years of the time the injury was committed; or (2) Three years of the date the injury was discovered." Section 5–109(d) states that the filing of a claim with the Health Care Office, in accordance with the Health Claims Act, "shall be deemed the filing of an action." Section 3–2A–06B(f) provides a 60–day period, after a plaintiff's waiver of arbitration, for the plaintiff to file a complaint in the appropriate circuit court.

In response to Upper Chesapeake's motion for summary judgment, the Swams argued that their action was timely filed because it was filed in the Health Care Office within three years of the injury and was filed in the Circuit Court within 60 days after their waiver of arbitration.

The Circuit Court agreed with Upper Chesapeake that the Swams' action was barred by the § 5–101 general statute of limitations and granted the hospital's motion for summary judgment. The court reasoned that Mrs. Swam's injury was not a "medical injury" as contemplated by the Health Claims Act, and that, therefore, the Swams inappropriately filed a claim with the Health Care Office. The court held that, by the time the action was filed in the Circuit Court, the three-year general statute of limitations had run and barred the action.

The Swams appealed to the Court of Special Appeals. Prior to argument in the intermediate appellate court, this Court issued the writ of certiorari. *Swam v. Upper Chesapeake Medical,* 389 Md. 398, 885 A.2d 823 (2005).

The Swams contend that the Circuit Court erred when it held that Mrs. Swam did not suffer a medical injury and that the general statute of limitations barred their claim. They argue that the claim was subject to the Health Claims Act, was properly filed with the Health Care Office, and was timely under the special statute of limitations applicable to such

claims. Alternatively, the Swams submit that, even if their claim was not subject to the Health Claims Act, the nature of the injury was such that the appropriate forum was unclear, and the filing with the Health Care Office within three years of the injury should satisfy the statute of limitations.

Upper Chesapeake argues that Mrs. Swam did not suffer a "medical injury" as defined by the Health Claims Act. Section 3–2A–04(a) of the Health Claims Act provides that "[a] person having a claim against a health care provider for damage due to a *medical injury* shall file his claim with the Director . . ." (emphasis added). Section 3–2A–01(g) of the Act defines a "medical injury" as an "injury arising or resulting from the rendering or failure to render health care." According to the hospital, because Mrs. Swam was not a patient at the time of her injury, the Health Claims Act precludes her from filing with the Health Care Office. Upper Chesapeake argues that this preclusion makes the the Swams' filing with the Health Care Office irrelevant. By the time the Swams filed in the appropriate forum, according to Upper Chesapeake, their claim was barred by the three-year general statute of limitations.

## II.

### A.

As previously indicated, § 3–2A–02(a) of the Health Claims Act states that "[a]ll claims, suits and actions . . . by a person against a health care provider for medical injury" must be filed with the Health Care Office. Section 3–2A–01(g) of the Health Claims Act defines "medical injury" as an "injury arising or resulting from the rendering or failure to render health care." This definition is also reflected in the special statute of limitations which, in § 5–109(a), applies to an action based on "an injury arising out of the rendering of or failure to render professional services by a health care provider." In order to fall within the ambit of the Health Claims Act, the claim must involve the rendering of or failure to render professional services. We agree with Upper Chesapeake and

the Circuit Court that Mrs. Swam's injury, although medically-related, did not result from the "rendering or failure to render health care." Our cases dealing with the scope of the Health Claims Act demonstrate that the Health Care Office is the appropriate forum for only those cases where professional care, or the lack thereof, is involved.

In *Cannon v. McKen*, 296 Md. 27, 459 A.2d 196 (1983), the Court emphasized the rendering of professional services requirement. The patient in *Cannon* brought an action against her dentist for injuries sustained when part of a dental chair or part of the x-ray equipment broke loose and fell on her. The *Cannon* opinion explained the scope of the Health Claims Act as follows (296 Md. at 34, 459 A.2d at 200):

> "It is therefore clear to us that the legislature intended to include in the scope of the Act only those claims for damages done to or suffered by a person originating from, in pertinent part, the giving of or failure to give health care. In our view, the legislature did not intend that claims for damages against a health care provider, arising from non-professional circumstances where there was no violation of the provider's professional duty to exercise care, to be covered by the Act. It is patent that the legislature intended only those claims which the courts have traditionally viewed as professional malpractice to be covered by the Act."

*See also Nichols v. Wilson*, 296 Md. 154, 160, 460 A.2d 57, 61 (1983) ("In our view, the legislature did not intend that claims for damages against a health care provider, arising from non-professional circumstances where there was no violation of the provider's professional duty to exercise care, to be covered by the Act").

Ultimately, this Court remanded the *Cannon* case to the trial court on the ground that the pleadings were "too sparse to allow a determination whether [the plaintiff's] injury arose because of the defendant's breach of his professional duty owed her or because of a breach of duty which he may have owed her as a premises owner or in some other non-profes-

sional capacity." *Cannon v. McKen, supra* 296 Md. at 37–38, 459 A.2d at 202.

Mrs. Swam's injury does not precisely fit the *Cannon* description of the scope of the Health Claims Act because she was not the recipient of care at Upper Chesapeake when the injury occurred. In fact, she was not on the premises as a patient but as a person accompanying her father who was to undergo surgery. As the Court noted in *Cannon,* 296 Md. at 36–37, 459 A.2d at 201, "those claims for damages arising from a professional's failure to exercise due care in non-professional situations such as premises liability, slander, assault, etc., were not intended to be covered under the Act and should proceed in the usual tort claim manner." Mrs. Swam's injury more appropriately matches this type of claim which should proceed directly to a circuit court.

This Court further explained the scope of the Health Claims Act in *Goicochea v. Langworthy,* 345 Md. 719, 694 A.2d 474 (1997). In *Goicochea,* the issue before the Court was whether a civil claim that a physician committed an assault and battery on a patient, during a routine medical examination, was covered by the Health Claims Act. The Court held that as long as the alleged injury occurs during the rendering of medical treatment, "the Act is implicated regardless of whether the claim sounds in negligence or intentional tort." *Goicochea,* 345 Md. at 728, 694 A.2d at 479. We clarified what type of claim would be outside the scope of the Act (*ibid.*):

> "If the complaint sets forth facts showing that the claimed injury was not inflicted during the rendering of medical services, or that the injury resulted from conduct completely lacking in medical validity in relation to the medical care rendered, the Act is inapplicable, and the action may proceed without first resorting to arbitration."

*See also Jewell v. Malamet,* 322 Md. 262, 587 A.2d 474 (1991) (holding that where the health care provider would not concede that the conduct complained of had no conceivable medical validity, the Health Care Office was the appropriate initial forum); *Brown v. Rabbitt,* 300 Md. 171, 175, 476 A.2d 1167,

1169 (1984) ("the critical question is whether the claim is based on the rendering or failure to render health care and not on the label placed on the claim").

The plaintiff's claim in *Goicochea* did not fall outside the Health Claims Act because the plaintiff specifically alleged that the doctor "caused his groin injury by improperly conducting a hernia examination." *Goicochea, supra*, 345 Md. at 729, 694 A.2d at 479. We held that the plaintiff "fail[ed] to set forth any factual basis upon which the court could properly conclude that [the physician's] actions had no conceivable medical validity or were totally unrelated to the performance of a routine hernia examination." *Ibid.* Mrs. Swam's injury, unlike the one in *Goicochea*, did not occur while a physician was rendering care. In fact, her injury did not involve medical care at all until *after* she sustained the injury, and she has made no complaint about such post-injury care. *See also Afamefune v. Suburban Hospital, Inc.*, 385 Md. 677, 694, 870 A.2d 592, 602 (2005) (holding that the plaintiff need not file her claim with the Health Care Office because the "allegations . . . do not show that [the plaintiff's] injuries were incurred during the active rendering of medical services and, indeed, they show that [the injuries] were not inflicted by a medical care provider or as a result of that provider's treatment or failure to treat").[4]

---

4. Although we agree that the injury to Mrs. Swam was not a "medical injury," we note that Upper Chesapeake mistakenly relies on this Court's decision in *Dehn v. Edgecombe*, 384 Md. 606, 865 A.2d 603 (2005), in arguing that a doctor-patient relationship must be present for there to be a "medical injury." The issue in *Dehn* did not concern the scope of the Health Claims Act, but was whether the physician owed any duty at all to the patient's wife who became pregnant following a vasectomy. In *Dehn*, a patient and his wife brought a medical malpractice action against a physician for negligence in post-operative care following a vasectomy performed by another surgeon. The Court held that the patient's wife did not have a claim for malpractice because the doctor did not owe her a duty. This holding did not purport to interpret "medical injury" or the scope of the Health Claims Act. Indeed, the Court explicitly stated that "the common law does not foreclose the possibility of imposing a duty of care in the absence of a doctor-patient relationship to a third party who never received treat-

Turning to the case at bar, the allegations of negligence in the complaint all relate to the disposal of medical waste and not to medical treatment. Such alleged conduct is not within the scope of the Health Claims Act, and therefore the Swams filed their action in the wrong forum when they filed with the Health Care Office. The appropriate avenue for the Swams was to proceed directly to Circuit Court because the injury was not a "medical injury" as defined by the Health Claims Act.

B.

■ While we hold that Mrs. Swam did not incur a "medical injury," our opinions have recognized that the phrase "medical injury" and its statutory definition are somewhat ambiguous. Furthermore, many of the cases before this Court, involving medically-related injuries, presented borderline situations where the appropriate forum for the claim was not entirely clear. In the present case, the alleged injury is medically-related in that involved medical instruments and occurred in a hospital. The defendant, whose alleged negligence caused the injury, is a health care provider. Both the plaintiffs' and the defendant's medical experts filed certifications as to whether the hospital and its personnel departed from applicable standards of health care.

This Court applied a broad interpretation of the word "claims" as used in the Health Claims Act, § 3–2A–02(a), in *Group Health Association, Inc. v. Blumenthal,* 295 Md. 104, 453 A.2d 1198 (1983). In *Blumenthal* the Court held that a claim, based on the doctrine of *respondeat superior* against a non-health care provider, fell within the Health Claims Act. In applying a "broad interpretation" of the word "claims," the Court examined the legislative intent underlying the Health Claims Act and concluded that "the Legislature contemplated a far-reaching requirement to arbitrate medical malpractice claims." *Group Health Association, Inc. v. Blumenthal, su-*

---

ment from the doctor. . . ." *Dehn v. Edgecombe, supra* 384 Md. at 621, 865 A.2d at 612.

*pra,* 295 Md. at 113, 453 A.2d at 1204. The discussion in *Blumenthal* demonstrates that the scope of the Health Claims Act should not be construed as narrowly inclusive.

Echoing the decision in *Blumenthal, Adler v. Hyman,* 334 Md. 568, 574, 640 A.2d 1100, 1103 (1994), pointed to the "broad construction of 'claim ... for medical injury' that our cases have placed on the Act." In *Adler,* an insurer for one physician brought an action in the Circuit Court against a second physician for contribution, claiming that the second physician was a joint tortfeasor. The trial court dismissed the claim, and this Court affirmed, holding that the claim was subject to arbitration pursuant to the Health Claims Act. We stated that "the purpose of the Act would not be served by restricting arbitration of claims for contribution to those asserted as part of the same litigation that includes the claim by the individual who directly suffered a personal injury." *Adler v. Hyman, supra,* 334 Md. at 575, 640 A.2d at 1103. Like *Blumenthal, Adler* cautioned against restricting the scope of the Health Claims Act too narrowly.

Several of our cases have recognized the potential difficulty in determining whether the Health Care Office is the appropriate forum for a claim. In *Cannon v. McKen, supra,* the Court was unable to determine from the record whether the injury sustained by the claimant in the dental chair constituted a "medical injury." As earlier discussed, the Court remanded the case for further proceedings to determine whether the claim fell within the Act. The analysis focused on the definition of "medical injury" and determined that the statutory definition is "somewhat ambiguous," 296 Md. at 32, 459 A.2d at 199. This ambiguity, combined with a medically-related injury, may create a situation where the proper forum is not entirely clear to a claimant.

This Court again confronted situations where the definition of "medical injury" made the proper forum somewhat unclear in *Jewell v. Malamet, supra,* and *Goicochea v. Langworthy, supra.* In *Jewell,* the plaintiff brought a civil action, alleging an assault and battery by her treating physician. She argued

that her claim was not included within the purview of the Health Claims Act. The Court held that, "[i]n the face of the allegations, we cannot say, as a matter of law, that the claims as set out were not for medical injury as allegedly suffered by Jewell." *Jewell v. Malamet, supra,* 322 Md. at 274, 587 A.2d at 480. Jewell's complaint did not sufficiently allege a claim that could not be considered a "medical injury." Therefore, we required that the claim be submitted to arbitration.

▆ In *Goicochea v. Langworthy, supra,* like *Jewell,* we were not able to determine conclusively whether the plaintiff suffered a "medical injury" as contemplated by the Health Claims Act. Therefore, the plaintiff, who alleged an assault and battery by his physician during an examination, was required to submit to arbitration. The Court held that the Health Care Office "initially will determine if the claim alleges a 'medical injury' and is therefore subject to the Act." *Goicochea v. Langworthy supra,* 345 Md. at 729, 694 A.2d at 479. *Jewell* and *Goicochea* underscore the fact that the proper forum for the filing of a borderline medically-related claim may not always be apparent. As these cases hold, the Health Care Office possesses the authority to determine whether a claim constitutes a "medical injury" in a borderline case and is therefore subject to the Health Claims Act.

In the present case, while we have held that the Swams' claim is outside the purview of the Health Claims Act, we are aware that the proper forum may not have been entirely obvious to the claimant. As previously discussed, Mrs. Swam's injury was very much medically-related, occurring in a hospital, and inflicted because of the alleged negligence of a health care provider. In light of the Court's broad interpretation of the Health Claims Act, and its willingness to be over-inclusive as opposed to under-inclusive in terms of covered claims, we should approach a claimant's choice of the proper forum, as it affects limitations, in the same spirit.

## C.

It should be emphasized that, not only was the Swams' claim medically-related, but it also conformed to the statutori-

ly prescribed time restraints for filing with the Health Care Office. The Swams filed with the Health Care Office within three years of the injury. This satisfied the statute of limitations in the Health Claims Act, § 5–109(a). Except for the forum in which it was initially filed, this would also satisfy the general statute of limitations applicable to civil actions, § 5–101. Furthermore, the action in the Circuit Court was filed within the prescribed period after the waiver of arbitration. Additionally, the Swams' claim in Circuit Court repeated verbatim the claim filed with the Health Care Office. The Circuit Court complaint contained no new information or allegations. Therefore, by the time the Circuit Court complaint was filed, Upper Chesapeake was already put on notice of all the allegations by the initial claim filed with the Health Care Office.

In *Bertonazzi v. Hillman*, 241 Md. 361, 216 A.2d 723 (1966), this Court recognized a tolling exception to the general statute of limitations when a case is timely filed, but in the wrong forum, and filing in the correct forum is after limitations have run. The plaintiff in *Bertonazzi*, mistakenly believing that defendant resided in Baltimore County rather than Baltimore City after misreading a map, filed suit in Baltimore County within the six month limitations period. He subsequently filed in the appropriate venue, Baltimore City, after the Baltimore County court dismissed the case for improper venue. The Baltimore City filing, however, occurred after the applicable six-month statute of limitations had passed, and the court dismissed the action. This Court reversed, holding that the running of the statute of limitations was tolled during the pendency of the suit in Baltimore County.

The *Bertonazzi* opinion reasoned that, to preclude the claim from going forward in the proper venue would be contrary to the purpose of statutes of limitations. "Statutes of limitations are designed primarily to assure fairness to defendants on the theory that claims, asserted after evidence is gone, memories have faded, and witnesses disappeared, are so stale as to be unjust." 241 Md. at 367, 216 A.2d at 726. In

*Bertonazzi,* the Court concluded that the tolling of the statute of limitations during the pendency of the suit filed in the wrong forum was consistent with this primary purpose of the statute of limitations because "the appellee ... was fully put on notice of the appellant's claim by suit in Baltimore County as she would have been by suit in Baltimore City." *Ibid. See also Weaver v. Leiman,* 52 Md. 708, 718 (1880) (observing that the running of a statute of limitations may be suspended if there is a "certain and well-defined exception clearly established by judicial authority").

In *Philip Morris USA v. Christensen,* 394 Md. 227, 239, 905 A.2d 340, 347 (2006), we revisited and reaffirmed the tolling rule set out in *Bertonazzi.* The Court distilled the tolling rule and established two necessary components for recognizing a tolling exception in a particular case: "(1) there is persuasive authority or persuasive policy considerations supporting the recognition of the tolling exception, and (2) recognizing the tolling exception is consistent with the generally recognized purposes for the enactment of statutes of limitations." The Court in *Philip Morris,* finding that these two components were satisfied, held "that if the conditions for the application of class action tolling are met, the filing of a class action complaint suspends the running of the statute of limitations at minimum from the time the putative class action is filed until the time that class certification is denied." *Philip Morris,* 394 Md. at 264, 905 A.2d at 362.

Here, both components of the tolling exception rule have been satisfied. The persuasive policy supporting the exception in this case is the ambiguity regarding the appropriate forum for a medically-related claim and basic fairness to the parties. The difficulty in determining the proper forum is analogous to the difficulty faced by the plaintiff in *Bertonazzi.* In *Bertonazzi,* the defendant's home was situated on the map so closely to the line dividing Baltimore County and Baltimore City that the appropriate venue was unclear. Likewise, although we hold that Mrs. Swam's injury was not a "medical injury," our cases broadly interpreting the scope of the Health Claims Act, and the ambiguous definition of medical injury,

made the determination of the proper forum problematical. Given this difficulty, the Swams should be allowed to pursue their claim on the merits despite the timely filing in the wrong forum. We emphasize again that the Swams timely filed their claim under the statute of limitations contained in the Health Claims Act, and that this filing also would satisfy the general statute of limitations if the Swams had initially filed in the proper forum.

Allowing the Swams' claim to proceed on the merits also is in accord with the second component of the tolling exception rule because it would not contravene the general purpose of the statute of limitations. As the Court stated in *Bertonazzi,* statutes of limitation are designed to assure fairness to the defendants. Here, Upper Chesapeake will experience no unfairness by allowing the Health Care Office filing to toll the statute of limitations. Upper Chesapeake had notice of the Swams' claim and the specific allegations within three years of the injury. In no way was the Swams' claim in Circuit Court "so stale as to be unjust." *See Bertonazzi,* 241 Md. at 367, 216 A.2d at 726. The timeliness of the Swams' claim also plays a role under this second component of the tolling exception rule because it emphasizes that Upper Chesapeake is not faced with defending a claim after "evidence is gone" and "memories have faded." *Ibid.*

In conclusion, we hold that the Circuit Court erred in dismissing the Swams' action on the ground that it was barred by the § 5–101 general statute of limitations. The initial filing with the Health Care Office tolled the running of the general statute of limitations because the Swams' brought a medically-related claim, the proper forum was ambiguous, and the filing was otherwise timely. These factors satisfy both components of the tolling exception set out in *Philip Morris.* In addition, Upper Chesapeake will suffer no unfairness in allowing the claim to proceed on the merits because it already had notice of the claim. Thus, the purpose of the statute of limitations is satisfied.

*JUDGMENT OF THE CIRCUIT COURT FOR HARFORD COUNTY REVERSED AND CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. APPELLEE TO PAY COSTS.*

CATHELL and HARRELL, JJ., Concur.

Concurring opinion by CATHELL, J. which HARRELL, J., joins.

I concur in the result reached by the majority of the Court that the statute of limitations is not available as a defense in the present case. I do so, however, for entirely different reasons and expressly disavow the reasoning of the majority which holds, for the first time in this State, that action begun in an executive branch agency can toll the running of a statute of limitations applicable to judicial branch proceedings. Moreover, in my view, it is totally unnecessary in this case to go where the majority has gone.

## Waiver

In my view, the respondent waived the defense of limitations by not raising it, prior to or in its answer. On May 13, 2004, the plaintiffs elected to waive arbitration and the Health Care Office ordered the case transferred to Circuit Court for Harford County. Then on May 17, 2004, the plaintiffs filed their complaint in the Circuit Court for Harford County.

On July 23, 2004, Upper Chesapeake Medical Center, the defendant below, having filed no other pleading or motion previously, filed its answer to the complaint. Included in that answer was the following language: "Upper Chesapeake Medical Center, Inc., reserves the right to rely on any applicable statute of limitations." There was no replication filed to the answer. Thereafter, on December 6, 2004, the defendant filed a motion for summary judgment, for the first time directly asserting as a defense a particular statute of limitations, Maryland Code (1974, 2006 Repl.Vol.), § 5–101 of the Courts

and Judicial Proceedings Article. The plaintiff then filed a response, i.e., a "Response in Opposition to Defendant's Motion for Summary Judgment."

Under the Maryland Rules,[5] one may not *reserve the right* to later raise a limitations defense. It must be pled in, or prior to, the answer; otherwise the defense of limitations is waived. Rule 2–323(g) provides that certain defenses must be raised in the answer to a complaint filed in a circuit court. A defense based on a "statute of limitations" must be raised in the answer. Rule 2–323(g)(15). In my view, even though this issue of timeliness of the raising of the limitations defense was not directly challenged below (as far as the record reflects), we, nonetheless, should reach the issue and resolve it as we did in a somewhat similar recent case involving one of the other affirmative defenses contained in the same rule. Rule 2–323(g)(13), like Rule 2–323(g)(15) at issue in the present case, provides that the affirmative defense of res judicata also must be plead no later than the filing of the answer. In *Anne Arundel County Board of Education v. Norville*, 390 Md. 93, 104–05, 887 A.2d 1029, 1035–36 (2005), we reached a similar issue, and, in our view, we should resolve this issue.

It is clear from the record in this case that the plea of limitations was not pled at the time the defendant's answer was filed. Instead, the defendant purportedly "reserved" the right to file such a plea at a later time, which it then did. I am unaware of any authority that permits a defendant to unilaterally and arbitrarily "reserve" the right to plead "any" affirmative defenses after the period in which the rule requires them to be plead. What the defendant sought to accomplish in this case is, in effect, to amend the Maryland Rules. To allow such an effort to pass without comment risks having subsequent litigants infer the Court's tacit approval. In my view, it is not an issue that should be left for another day. If a party may ignore this particular rule, one may

---

5. Hereinafter "Rule(s)."

presume that litigants have the power to modify any rule when, in their view, a reason exists to do so.

It is clear to me that limitations must be pled no later than the filing of the answer. That is the position consistently taken by our case law. When construing the applicability of the defense of limitations under the predecessor rule relating to the time for the filing of defenses of limitations, we said in *Foos v. Steinberg*, 247 Md. 35, 37, 230 A.2d 79, 80 (1967) that:

> "In reversing the lower court we need go no further than to hold that the appellee's plea of limitations was not filed within the time contemplated by the Maryland Rules and thus should have been stricken. . . . Rule 342 provides that a plea of limitations must be specially pleaded . . . and further provides that the 'plea of limitations must be filed within the time required by Rule 307 (Time for Defendant's Initial Pleading).' "

*See also, Dupont, Glore, Forgan, Inc. v. Barshack*, 271 Md. 316, 318, 316 A.2d 527, 528 (1974), (stating the general proposition that: "Maryland Rule 342 d 2 provides that a plea of limitations 'must be filed within the time required by Rule 307 (Time for Defendant's Initial Pleading)' "). In *Dupont*, the defendant filed preliminary motions that, by rule, extended the time for the filing of the answer and thus, the time for raising of the plea of limitations was also extended. In the present case, when the defendant, the respondent in this appeal, filed its answer, it did not raise the plea of limitations. Instead it unilaterally and arbitrarily attempted to extend the time required for the filing of *any* plea relating to *any* statute of limitations.

Much more recently, albeit as dicta in that the Court was distinguishing between conditions precedent and statutes of limitation, this Court, relying on the *Foos* case, noted in *Waddell v. Kirkpatrick*, 331 Md. 52, 59, 626 A.2d 353, 356 (1993), that:

> "In contrast [to a condition precedent], a statute of limitations affects only the remedy, not the cause of action. The

failure of a defendant to raise the bar of limitations, timely, *see* Maryland Rule 2–323(g)(16),[6] results in the waiver of limitations, which permits the plaintiff to proceed with the trial of his or her case." (Citations omitted.) (Footnote omitted.)

We also noted in *Waddell* that "Maryland Rule 2–323(g)[(15)] requires the statute of limitations to be specially pleaded as an affirmative defense." *Waddell,* 331 Md. at 59 n. 6, 626 A.2d at 356 n. 6.

*Foard v. Snider,* 205 Md. 435, 451, 109 A.2d 101, 108 (1954), does note that there was language in an earlier case, *Stockett v. Sasscer,* 8 Md. 374, 377 (1855), that indicated that if there is a reply to the answer, i.e., a replication is filed to the answer, the waiver effect of the failure to file the defense with the answer may itself be waived. That, however, is not the situation in the case *sub judice.* There was no general response to the answer. Petitioner merely filed an opposition to the motion for summary judgment filed by the respondent.

The Court of Special Appeals consistently has followed our *Foos* holding. Chief Judge Bell of this Court, while a judge of that court, citing *Foos,* wrote in *Brooks v. State,* 85 Md.App. 355, 363, 584 A.2d 82, 86 (1991): "We agree with the State that appellant's failure to challenge his prosecution . . . in the court below on the basis of the statute of limitations resulted in his waiver of that defect. . . ." Later, he noted:

> "This Rule [the comparable rule] makes clear that the plea of limitation is an affirmative defense which must be pleaded specially. It, and its predecessors, . . . have been so interpreted. Failure specially to plead limitations within the time set forth in the Rule results in a waiver of the plea. Because the plea is waivable, it necessarily follows that it is not jurisdictional.

---

**6.** Since 1993, what was subsection (16) has been re-codified as subsection (15), the subsection applicable in the case at bar. The holding in *Foos* and *Waddell* has not been modified.

. . .

"Because appellant did not timely raise limitations in the court below, the defense is waived." (Citations omitted.) *Brooks*, at 364–66, 584 A.2d at 87–88.

The Court of Special Appeals in *Meleski v. Pinero International Restaurant, Inc.*, 47 Md.App. 526, 542, 424 A.2d 784, 794 (1981), relying on *Foos*, stated that:

> "Three of the appellants, the two Meleskis and Chas. H. Steffey, Inc., did not file timely pleas of limitations to the counterclaim filed against them. . . . The untimeliness of the plea as to them was raised by the appellee in its response to their pre-trial motion for summary judgment on limitations grounds. The court correctly ruled that the defense was not available to them." (Citations omitted.)

Accordingly, I would hold that the defense of limitations was waived by it not being filed with the defendant's answer. I would not reach the issue the majority finds determinative.

### Tolling of the Statute of Limitations by Filing in the Wrong Forum

I additionally disagree with the majority opinion that the filing of the claim with the Health Care Office, an administrative entity, within three years of the alleged injury, tolled the general statute of limitations which relates, in the context of the present case, only to the filing of negligence claims with the courts. The majority first attempts to justify this drastic extension of our holding in *Bertonazzi v. Hillman*, 241 Md. 361, 216 A.2d 723 (1966), by describing the difficulty that persons have, or may have, determining whether injuries they have received are "medical injuries" for purpose of determining whether it was necessary to file a claim with the Health Care Office prior to filing an action in a circuit court. The majority states: "While we hold that Mrs. Swam did not incur a 'medical injury,' our opinions have recognized that the phrase 'medical injury' and its statutory definition are somewhat ambiguous." *Ante* at 539, 919 A.2d at 39. While I agree that the phrase "medical injuries" may give rise to some

difficult judgment calls, I do not understand what such ambiguous language in a statute relating to the administrative processing of "medical injuries," has to do with the clear, unambiguous, language of the general statute of limitations applicable to civil actions, i.e., § 5–101 of the Courts and Judicial Proceedings Article.

In discussing this issue, the majority relies on *Philip Morris USA, Inc. v. Christensen,* 394 Md. 227, 905 A.2d 340 (2006), in addition to the *Bertonazzi* case. The majority also mentions the 1880 case of *Weaver v. Leiman,* 52 Md. 708, for the proposition that the judicial authority can establish " 'certain and well-defined exception[s]. . . .' " *Ante* at 543, 919 A.2d at 41. I do not believe that any holding in either of the three cases justifies what the Court is now doing. All three of the cases only involved actions and proceedings in strictly judicial proceedings. *Bertonazzi* involved the filing of a case in the wrong county, in Baltimore County when it should have been filed in Baltimore City. *Christensen* concerned actions conducted exclusively within the judicial branches of government. It involved no administrative agencies. In *Christensen,* the Court held that, with certain limitations, the filing of a class action in court might toll the running of the statute of limitations as to the "putative members of the class."

*Weaver* involved only a single court case and whether the statute of limitations applied. It, in its totality, supports the views of this concurrence—not the majority opinion. The Court held that the statute of limitations had not been tolled in that case. As specially relevant to the present case, the Court stated:

> "The complainant could have safely brought his suit immediately after this sale, even if it would have been difficult for him to have asserted his rights before.

> "In short, we find nothing in any, or all of these objections combined, to affect the running of limitations. *Mere doubt as to the right, or difficulty in the way of its assertion, will not do.* Apart from the savings and disabilities expressed in the Statute itself, there must, in order to

defeat its operation, be some insuperable barrier, or some certain and well-defined exception clearly established by judicial authority. In *Green v. Johnson,* 3 G. & J. 394, the court expressed in very strong terms its disapproval of all attempts to remove the safeguards, and fritter away the provisions of this most important Statute, by judicial refinements and subtle exceptions, or to increase the number of interpolations or constructive innovations that have already been engrafted upon it." (Emphasis added.)

*Weaver,* 52 Md. at 717–18. In my view, *Weaver* offers little, if any, support for the position the majority takes in this case.

*Bertonazzi* appears to be the seminal case in this state for judicial attacks on the legislatively created statutes of limitations. Only eleven years after its filing, however, even this Court was reluctant to extend its holding. In *Walko Corp. v. Burger Chef Systems, Inc.,* 281 Md. 207, 378 A.2d 1100 (1977), a certification from the federal courts, we discussed the general rule of law and its application in *Bertonazzi:*

"This policy of repose has fostered a traditional rule concerning the tolling of statutes of limitation that can be fairly termed one of strict construction. Early on we adopted this rigorous stance: 'The principle of law is indisputable, that when the Statute of Limitations once begins to run, nothing will stop or impede its operation.' The rule has lost little of its vitality.... *[S]ee McMahan v. Dorchester Fert. Co.,* 184 Md. 155, 160, 40 A.2d 313 (1944) ('where the Legislature has not made an exception in express words in the Statute of Limitations, the Court cannot allow any implied and equitable exception to be engrafted upon the statute merely on the ground that such exception would be within the spirit or reason of the statute.')

"This venerable rule, which defers to the legislative intent expressed in the statute of limitations itself, and avoids implied exceptions or strained constructions, is also applicable in cases such as the one at bar where an action filed initially within the required period fails for some technical, procedural defect falling short of a full decision on the merits. Absent a statutory provision saving the plaintiff's

rights, the remedy is barred where limitations has run during the pendency of the defective suit.

. . .

"At first blush, *Bertonazzi v. Hillman,* 241 Md. 361, 216 A.2d 723 (1966), would appear to stand as authority for the broad proposition that under Maryland law the running of the limitations period is tolled by a procedurally defective action which is timely filed. This is not borne out, however, by an analysis of that case. There, suit was commenced well within the three year period of limitations, but in Baltimore County instead of Baltimore City where the defendant resided. . . .

"In *Bertonazzi,* the Court carved out a narrow exception to the traditional rule against engrafting implied exceptions upon the statute of limitations in certain situations where the sole reason for the dismissal of the prior action was improper venue. . . . Just how narrow the *Bertonazzi* exception was intended to be was promptly demonstrated in *Burket v. Aldridge,* 241 Md. 423[, 216 A.2d 910 (1966)], decided a day later. There, suit was initially filed within the required three-year period, but the sheriff's return of 'mortuus est' revealed to the plaintiff that the defendant had died. Service was then made upon the personal representative within the six months required by Art. 93, § 112, but not within the three-year statute of limitations. In affirming the dismissal, we held that it was necessary for the suit to be filed 'both within three years from the date of the injuries and within six months from the qualification of the personal representative.' *Id.* at 430, 216 A.2d 910. *Bertonazzi stands alone, then, confined to the special circumstances which culminated in the filing of the suit in the wrong county.*

"Whatever facts may have been present in *Bertonazzi v. Hillman,* 241 Md. at 370–71, 216 A.2d 723, that moved us to relax the anti-tolling rule, they do not exist here. . . .

"In addition, the policy considerations on which our established rule is founded weigh heavily against any departure

in this case. If, despite the absence of a saving statute, a plaintiff were permitted to toll the statute of limitations by filing suit which was later dismissed as being procedurally defective, he could effectively postpone the running of the statute for an indefinite period of time. Even the typical saving statute imposes a time restriction, usually one year, on the suspension of limitations.

"Arguably, appellees were on notice of Walko's claim once the motion to intervene was filed. As we have indicated, however, Walko's approach to this case was hardly one of vigilance. *The statute of limitations reflects a legislative judgment of what is deemed an adequate period of time in which 'a person of ordinary diligence' should bring his action."* (Footnote omitted.) (Some citations omitted.) (Some emphasis added.)

*Walko,* 281 Md. at 210–215,378 A.2d at 1101–04.

Although this Court has crafted other rules that have limited the applicability of statutes of limitations, i.e., the discovery rule, it has, up until now, sought, generally, to defer to the policy created by the legislative branch, and has never, as far as I have discovered, looked to actions initiated outside the judicial branch in order to toll the running of the statute of limitations.

In *Gary v. Overholtzer,* 332 Md. 339, 631 A.2d 429 (1993), a case in which parents were asserting that their claim for medical expenses incurred for a minor child should be joined with the child's claim in order that the statute of limitations, as to the parents' claim, would be tolled until the child reached majority, the Court stated:

"For reasons we now explain, in this state the parents' claim for medical expenses is not required to be joined in the same action brought by the injured minor to recover for its own personal injuries. Consequently, the assertion that the parents' claim for medical expenses may be tolled during the minority of the child by § 5–201 of the Courts Article is without merit.

. . .

"Furthermore, by not requiring the parents' claim for medical expenses to be joined with the minor's own claim and allowing both to be tolled by § 5–201 of the Courts Article, we remain loyal to the well established principle 'that where the legislature has not expressly provided for an exception in a statute of limitations, the court will not allow any implied or equitable exception to be engrafted upon it."

. . .

"By failing to file an action within three years of the accident, the parents' claim for all medical expenses incurred as a result of the accident prior to emancipation of the minor is barred by limitations."

332 Md. at 353–60, 631 A.2d at 436–40.

In *Booth Glass Co. v. Huntingfield Corp.* 304 Md. 615, 500 A.2d 641 (1985), a case involving the attempt to apply the continuous course of treatment rule to construction defect cases,[7] a property owner discovered a leak in a commercial building caused by a contractor. The contractor attempted to repair the leak, but was apparently unsuccessful. More than three years after the discovery of the leak the owner brought an action against the contractor. When the contractor raised

---

7. The continuous course of treatment rule in medical malpractice cases apparently was abrogated in the later case of *Hill v. Fitzgerald,* 304 Md. 689, 700, 501 A.2d 27, 32–33 (1985), where we said; "The provisions of § 5–109, and the intent underlying the enactment of that statute, are plainly inconsistent with the survival of the continuing treatment rule. We thus conclude that the common law rule was abrogated by the legislature.... The three-and five-year periods of limitations must, therefore, be calculated in accordance with the literal language of § 5–109. Indeed, the five-year maximum period under the statute will run its full length only in those instances where the three-year discovery provision does not operate to bar an action at an earlier date. *And this is so without regard to whether the injury was reasonably discoverable or not."* (Emphasis added.)

In the instant case, there is no dispute over when the injury was discovered. It was discovered when Swam suffered the needle stick in a non-medical treatment injury context. Thus, the statute began to run at that time.

the defense of limitations, the property owner argued that the period during which the contractor was attempting to repair the leak tolled the running of limitations. We said in that case:

"Under § 5–101 of the Courts Article, an action must be filed within three years of the date that it 'accrues.' The question of when a cause of action accrues is left to judicial determination.

. . .

"Because Huntingfield knew, or reasonably should have known of Booth's negligence in June of 1976, its cause of action accrued at that time and suit was therefore barred by the three-year limitations period under § 5–101.

. . .

"We have long adhered to the principle that where the legislature has not expressly provided for an exception in a statute of limitations, the court will not allow any implied or equitable exception to be engrafted upon it.[8] Indeed the General Assembly has expressly provided exceptions to § 5–101 in those instances where it determined that a time limitation should be computed differently. . . .

"Where repairs have been held to toll limitations, courts have done so largely on principles of equitable estoppel. . . . In Maryland, however, it is well settled that equitable estoppel will not toll the running of limitations absent a showing that the defendant 'held out any inducements not to file suit or indicated that limitations would not be pleaded.'

"The record does not disclose that Booth held out any inducements to Huntingfield not to file suit, or that it indicated in any way that limitations would not be pleaded. Nor is there any showing of an unconscionable, inequitable or fraudulent act of commission or omission by Booth upon

---

8. It can be argued that this principle has been observed by the Court more in the breach than in the observance.

which Huntingfield relied in delaying the initiation of its lawsuit." (Citations omitted.)

*Booth Glass,* 304 Md. at 619–24, 500 A.2d at 642–45.

There is no act by the appellee in the instant case that can be remotely construed as having misled Swam as to the applicability of the general statute of limitations. This is not a case of equitable estoppel in the first instance, but even if it were, there is absolutely no evidence in the record that the appellee in any way improperly interfered with Swam's ability to file her action in court at any time from the moment of the needle stick.

We are reminded by our opinion in *Hill, supra,* that the purpose of the statutory scheme creating the medical arbitration statute (including its own statutes of limitation and repose) was "to contain the 'long-tail' effect of the discovery rule in medical malpractice cases *by restricting, in absolute terms,* the amount of time that could lapse between the allegedly negligent treatment of a patient and the filing of a malpractice claim related to that treatment." 304 Md. at 700, 501 A.2d at 32 (emphasis added).

What the majority does in the present case is to create an extraordinary exception to the general statute of limitations by holding that the involvement of Swam with the Health Care Office under a statute designed to limit the time for the filing of certain claims, actually extends the time for the filing of a distinctly different claim in a judicial forum. For the first time, as far as I have discovered, the Court is extending a period of limitations without there being any legislatively created exception because of something that happened administratively in another branch of government. Now that the majority has crossed that line, it will be difficult, if not impossible, for this Court, in any principled fashion, to retreat back across the line when myriads of litigants who have first proceeded before any number of administrative agencies, then belatedly file claims in court, and cite to *Swam* as authority

for the tolling of the running of the general statute of limitations.

Judge HARRELL joins in this concurrence.